977 F.2d 829
 Bankr. L. Rep. P 74,939
Eugene LANDON; Hershel Chadek; Cyril Moyer; Martin Campbell
v.
A. Bruce HUNT, III; Carol J. Hunt
Eugene Landon; Hershel Chadek; Cyril Moyer; Martin
Campbell; and their Counsel, Allen E. Ertel and
John A. Felix, Appellants.
 No. 92-7105.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 17, 1992.
Decided Oct. 20, 1992.
 
 Allen E. Ertel (argued), Allen E. Ertel & Associates, Williamsport, Pa., for appellants Landon, Chadek and Ertel.
 John A. Felix (argued), Williamsport, Pa., for appellants Moyer, Campbell and Felix.
 William P. Carlucci (argued), Fisher, Rice, Barlett, Elion & Wayne, Williamsport, Pa., for appellees.
 Before: STAPLETON, SCIRICA and NYGAARD, Circuit Judges.
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 Four appellants, Eugene Landon; Hershel Chaddick;[1] Cyril Moyer; and Martin Campbell and their counsel, Allen E. Ertel, Esq., and John A. Felix, Esq., appeal from an order, which affirmed a bankruptcy court's order dismissing involuntary petitions filed against appellees Bruce Hunt and Carol Hunt, and imposing attorneys fees, costs, and punitive sanctions on appellants. We will affirm.
 
 I.
 
 2
 The district court jurisdiction is from 28 U.S.C. § 158(a). Our jurisdiction is from 28 U.S.C. § 158(d), and 28 U.S.C. §§ 1291 and 1292. Bankruptcy Rule 8013 controls our standard of review, and provides that "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court, to judge the credibility of the witnesses." See In re Jersey City Medical Center, 817 F.2d 1055, 1059 (3d Cir.1987). Our standard of review is plenary over any conclusions of law by the bankruptcy or district courts. Id.
 
 II.
 
 3
 With the exception of Chaddick's claim, this entire affair stems from the purchase, appraisal and sale of an antique desk. Appellants Moyer and Campbell had offered a Chippendale secretary desk for sale. Mr. Hunt decided to purchase the desk for his wife and paid Moyer and Campbell $14,500.00 for the desk.
 
 
 4
 Hunt then contacted appellant Landon to appraise the desk. Landon determined the desk to be an American piece, and opined that the desk could be sold for $1,000,000.00. Mrs. Hunt contacted Christie, Manson and Woods International Inc. (Christies) to auction the desk.
 
 
 5
 Landon and Mr. Hunt subsequently disagreed as to the amount of any commission Landon would receive from the sale of the desk. After negotiation, they agreed that Landon would receive 20% of the desk's sale price. It was sold for $220,000.00.
 
 
 6
 After the sale, Moyer and Campbell asserted an ownership interest in the desk. Moyer and Campbell advised Christies of their claim on October 29, 1987. In response, Mrs. Hunt filed a declaratory action in the Court of Pleas for the Eighth Judicial Circuit of South Carolina asking that she be declared the owner of the desk. Attorney Ertel represented Campbell and Moyer at this trial.
 
 
 7
 Meanwhile, appellant Landon, again represented by Attorney Ertel, filed suit against the Hunts, Christies, and others in the Lycoming County, Pennsylvania Court of Common Pleas. He alleged a 20% ownership interest in the desk entitling him to $44,000.00 of the proceeds. The Hunts denied that Landon owned any part of the desk, but admitted owing him a commission. Christies removed the case to the U.S. District Court for the Middle District of Pennsylvania, and deposited the $220,000.00 sale proceeds with the district court. Campbell and Moyer, still represented by Attorney Ertel, joined this action alleging their 40% ownership interest.
 
 
 8
 On May 25, 1989, a South Carolina jury rejected Campbell and Moyer's claims and declared Carol J. Hunt to be the owner of the desk. On November 8, 1989, the court entered judgment in favor of the Hunts on the claims of both Campbell and Moyer. Thereafter,
 
 
 9
 The sole issues remaining for trial were Landon's claim concerning his alleged entitlement to a commission on the sale of the secretary and the Hunts' claims over against Campbell and Moyer.
 
 
 10
 Landon v. Hunt, 938 F.2d 450, 451 (3d Cir.1991) (Landon I ) (emphasis added).
 
 
 11
 The case was set for jury selection and trial on November 13, 1989. Neither Ertel nor Landon appeared at the trial and the court dismissed Landon's claim with prejudice for failure to prosecute. Landon, 938 F.2d at 451. That decision was not appealed and the district court's order thus discharged any claim Landon had against the Hunts for a commission.
 
 The bankruptcy judge stated that:
 
 12
 I have no idea why Ertel and Landon decided not to pursue their case before Judge Kosik and instead filed the involuntary petitions to obtain an order of relief against the Hunts in bankruptcy.
 
 
 13
 App. at 38A. Ertel had contended that he was concerned about possible delays on appeal, and for that reason filed the involuntary petitions with the bankruptcy court:
 
 
 14
 Well, the only problem we had, your honor, there were threats to hold up this money just by appeals for five years, even if they were unfounded. And that's--we thought that this court was better to get a distribution of funds.
 
 
 15
 I think, quite frankly, we would have gotten an very straight judgment over there without any problem, but we would have been faced with delay on appeal, on appeal, on appeal.
 
 
 16
 Id. We agree with the bankruptcy court's characterization that Ertel's statements "strain credibility." As the bankruptcy court further stated:
 
 
 17
 Even assuming the Hunts would have appealed an adverse decision of Judge Kosik to the Third Circuit, the delay in getting a final decision from the circuit would not be near as great as the delay occasioned by a hearing in the bankruptcy court, an appeal to the district court, and an appeal to the circuit court.
 
 
 18
 Id.
 
 
 19
 Carol Hunt's answer to the Lycoming County complaint admitted owing Landon a commission. All Attorney Ertel had to do was show up for trial and accept Hunt's offer. He did not, and at 10:20 A.M. Landon's claim was foreclosed when a judgment was entered against him. At 3:05 P.M. that same day, Attorney Ertel filed involuntary bankruptcy petitions against the Hunts on behalf of appellant Landon.[2]
 
 
 20
 The bankruptcy court held three hearings on the involuntary petitions; dismissed them; and, moreover, found them to have been filed in bad faith. The court then imposed sanctions on the appellants and their counsel as follows: (1) for defending the petition filed by appellant Landon, the court ordered Attorney Ertel to personally pay the Hunt's attorneys' fees and costs in the amount of $11,357.79; (2) for defending the petition filed by appellants Moyer and Campbell, the court ordered appellants Campbell, Moyer, and Attorney Ertel to be jointly and severally liable to pay $6,804.90 to the Hunts; (3) for defending the petition filed by appellant Chaddick, the court ordered Chaddick to pay $1,367.50 to the Hunts; (4) a $2,000.00 sanction on Attorney Felix pursuant to Bankruptcy Rule 9011 payable to the Hunts; and (5) a $10,000.00 sanction against Attorney Ertel pursuant to Bankruptcy Rule 9011 payable to the Hunts.
 
 III.
 
 21
 The bankruptcy court awarded these attorney fees and costs to the Hunts in part under 11 U.S.C. § 303(i)(1), which states:
 
 
 22
 If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment--
 
 
 23
 (1) against the petitioners and in favor of the debtor for--
 
 
 24
 (A) costs; or
 
 
 25
 (B) a reasonable attorney's fee; or
 
 
 26
 (2) against any petitioner that filed the petition in bad faith, for--
 
 
 27
 (A) any damages proximately caused by such filing or--
 
 
 28
 (B) punitive damages.
 
 
 29
 In order to file a valid petition for involuntary bankruptcy against a debtor, the creditor must meet the requirements of 11 U.S.C. § 303(b), which provides in pertinent part that:
 
 
 30
 An involuntary case against a person is commenced by filing with the Bankruptcy Court of a petition under Chapter 7 or 11 of this Title ... by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability, or the subject of a bona fide dispute ...
 
 
 31
 if there are fewer than twelve such holders by one or more of such holders that hold in the aggregate at least $5,000.00 of such claim ...
 
 
 32
 The Bankruptcy Code clearly states that an involuntary proceeding can only be filed by creditors who hold claims that are not contingent as to liability or subject to a bona fide dispute. See In re All Media Properties Inc., 5 B.R. 126 (1980), aff'd, 646 F.2d 193 (5th Cir.1980) (per curiam) ("Congressional intent under this title, in respect to involuntary petitions, is to qualify as a petitioning creditor any party holding a noncontingent claim, leaving to later or other proceeding the issue of substantial disputes as to liability").
 
 
 33
 The record indisputably reveals that all of the appellants based their actions on claims they knew to be without basis in either law or fact. Appellant Landon's claim was previously dismissed with prejudice. By failing to attend trial before the district court, at which his commission was at issue, Landon forfeited any claim to a commission. Hence, the Hunts can properly claim they no longer owe Landon a fee, totally refuting his claim.
 
 
 34
 Section 303(b) of the Bankruptcy Code requires that only a person who holds an undisputed claim against the debtor may file an involuntary petition. Landon held no such claim. He knew it and so did Ertel. Under Federal Rule of Civil Procedure 41(b), a dismissal for failure to prosecute operates as an adjudication on the merits, and thus is a dismissal with prejudice, baring further action between the parties. Napier v. Thirty or More Unidentified Federal Agents, 855 F.2d 1080, 1087 (3d Cir.1988). See also Kimmel v. Texas Commerce Bank, 817 F.2d 39 (7th Cir.1987) (Rule 41(b) dismissal serves as a final judgment on the merits). Any right Landon had to a commission was extinguished when the district court dismissed his case with prejudice. Thus, when Landon filed the involuntary petition against the Hunts, he was no longer a creditor and was not authorized to file.
 
 
 35
 Next, Moyer and Campbell's claims had long before been determined by a South Carolina jury verdict in the Hunts favor. Finally, Chaddick's ten-year-old claim was completely barred by the statute of limitations. Consequently, none of the appellants had any claim whatsoever against either Mr. or Mrs. Hunt. Moreover, Attorneys Ertel and Felix knew it.
 
 
 36
 We agree with both the district and bankruptcy courts that the Hunts were victimized by the manner in which attorneys Ertel and Felix abused the legal system. It was clearly proper for the bankruptcy court to dismiss the involuntary petitions.
 
 
 37
 Appellants point to nothing in the record which could possibly render the bankruptcy court's findings of bad faith to be clearly erroneous. On the contrary, the record amply demonstrates appellants' and counsels' bad faith and disregard for bankruptcy law and procedure. The bankruptcy judge expressed his distress and concern that "Ertel's actions cannot even be characterized as a conscious tactic of using the Bankruptcy Court as a debt collection device when Campbell, Moyer, and Chaddick had no bona fide debts against the Hunts."
 
 
 38
 Ertel and Felix next contend that it was error for the court to impose § 303(i) punitive sanctions upon them, citing as authority In re Fox Island Square Partnership, 106 B.R. 962, 967 (Bkrtcy.N.D.Ill., 1989). This, however, is not even an issue. The bankruptcy court did not base its sanction against them exclusively on § 303(i). The bankruptcy court stated and the district court agreed that:
 
 
 39
 As a general practice and policy, this Court is very reluctant to impose punitive sanctions upon counsel and refrains from exercising the Court's authority under Bankruptcy Rule 9011. However, the conduct of counsel in this case represents the most flagrant abuse of the procedure for involuntary petitions that the Court has experienced. Therefore, in consideration of the complete failure of Felix and Ertel to comply with Bankruptcy Rule 9011 and in accordance with the deterrent purposes of the rule, this Court finds and concludes that an appropriate sanction in the nature of punitive damages shall be entered against both Felix and Ertel individually.
 
 
 40
 The court acted appropriately in awarding sanctions under Rule 9011; observing that both Ertel and Felix acted in bad faith and that their conduct amounted to the most flagrant abuse of process the court had ever witnessed. Bankruptcy Rule 9011 was designed to deter actions like those the court witnessed here. Quiroga v. Hasbro, Inc., 934 F.2d 497, 505 (3rd Cir.1991).[3] We concur with the court's award of sanctions under Bankruptcy Rule 9011.
 
 IV.
 
 41
 We conclude that the appeal is wholly without merit. Appellants have presented this court with no colorable argument to support the issues they raise on appeal. Hence, we will affirm.
 
 
 
 [1]
 This name is spelled differently throughout the pleadings. We will adopt the spelling used by the district court in its memorandum, Chaddick
 
 
 [2]
 Appellants Campbell, Moyer, and Chadek later joined the petition as creditors
 
 
 [3]
 Quiroga applied to sanctions in a civil case under Fed.R.Civ.P. 11. Bankruptcy Rule 9011 is the equivalent sanctions rule under Title 11. The policies underlying both rules are the same, and our reasoning in Quiroga is equally applicable to the sanctions imposed under Bankruptcy Rule 9011