In re LAW CENTER, Debtor.

In re Jayne Shinko–William Miele Rentals d/b/a Shinko–Miele Housing, Miele Housing, Debtor

Nos. 5–00–02480, 5–00–02481.

United States Bankruptcy Court, M.D. Pennsylvania.

March 16, 2001.

---

Vanessa M. Daniele, William J. Miele, Miele & Daniele, Williamsport, PA, for William J. Miele.

Joseph G. Murray, Wilkes–Barre, PA, for Jayne Shinko.

## OPINION

JOHN J. THOMAS, Bankruptcy Judge.

On July 13, 2000, Jayne Shinko, a practicing attorney, on her own behalf, filed an

Involuntary Bankruptcy Petition against an entity known as the Law Center. William J. Miele Esq., also an attorney, through his lawyer, has responded to the Involuntary Petition and moved to dismiss. Mr. Miele has made the following allegations in his Motion. The Law Center was a Pennsylvania partnership between Jayne Shinko and William J. Miele. P.C. William J. Miele and Jayne Shinko were formerly husband and wife, having been divorced on June 27, 1995. During their marriage they operated the business known as the Law Center. In April 1992, the parties signed a formal partnership dissolution agreement dissolving the Law Center and dividing its assets between the parties. Among other things, the dissolution agreement provided that some accounts would be subject to equitable distribution during the parties' divorce action. After lengthy litigation regarding equitable distribution before a Special Master, the Lycoming County Court of Common Pleas entered an Order affirming the Master's recommendations. (See Opinion dated August 12, 1997 and attached as Exhibit A to Ms. Shinko's Answer to Miele's Motion for Sanctions (Doc. # 12).) Said Order was affirmed by the Pennsylvania Superior Court on September 30, 1999 (Exhibit B to Ms. Shinko's Answer to Miele's Motion for Sanctions) and allowance of appeal was denied by the Pennsylvania Supreme Court on March 20, 2000 (Exhibit C to Ms. Shinko's Answer to Miele's Motion for Sanctions). On May 17, 2000, a Request for Reconsideration directed to that Court was denied (Exhibit D to Ms. Shinko's Answer to Miele's Motion for Sanctions).

After reciting these facts, Mr. Miele requests that the Involuntary Petition be dismissed; that all costs and expenses be assessed against the "debtor" [sic], presumably the Petitioner; and that punitive damages be assessed. Mr. Miele has also moved for sanctions against Ms. Shinko alleging similar facts and requesting similar relief including the assessment of monetary sanctions. (Motion for Sanctions Pursuant to 11 U.S.C. § 9011(sic) (Doc. # 7).) While admitting most of the operative facts alleged in the Answer to the Involuntary Petition and the Motion for Sanctions, Ms. Shinko asserts in paragraph 19 of her Reply (Doc. # 13) that, "[t]he trial court purported to transfer partnership assets on July 18, 2000, leaving the partnership insolvent and unable to pay off its judgment notes or repay creditor partner her capital account." This is the essence of Ms. Shinko's Petition. She alleges that there still exists a partnership and that the state court has liquidated the partnership assets in a way presumably inconsistent with the Uniform Partnership Act of Pennsylvania.

Ms. Shinko has filed this Involuntary under the provisions of 11 U.S.C. § 303(b)(3)(A). She holds herself out as a "creditor partner for her capital account." She further claims that William Miele has breached the dissolution agreement in several respects. (Brief in Support of Creditor Partner's Involuntary Petition and in Opposition to Miele's Answer and Motion to Dismiss (Doc. # 15).)

▮▮▮ While an involuntary bankruptcy petition regarding a partnership need not meet the requirement of § 303(b)(1) requiring three or more entities holding claims of at least $10,775 or the § 303(b)(2) requirement of a minimal amount of $10,775 if there are fewer than 12 holders of claims, a petitioner attempting to place a partnership into involuntary bankruptcy must still satisfy the requirements of § 303(h). 2 Lawrence P. King, et al., Collier on Bankruptcy ¶ 303.07 at 303–45 (15th ed. rev.2000). Section 303(h) of the Bankruptcy Code includes a requirement

that, before the court can order relief against a debtor in an involuntary case, the court must find that "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute." 11 U.S.C. § 303(h). This brings my attention to the Involuntary Petition in this case, originally executed by Ms. Shinko, which conspicuously has left blank that area of the form which requires that certain boxes be checked under the heading "Allegation"[1]. The Petitioner was required, inter alia, to allege and thereafter establish the "debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute." Based on the pleadings filed, as well as the record created at the time of hearing, it is apparent why there was no box checked in that section. The petitioning creditor simply could not prove that the partnership failed to pay its undisputed debts. The only debt specifically alluded to in the petitioner's case was the allegation of a debt in favor of herself as a creditor partner. To this there was ample evidence of the existence of a bona fide dispute. While the Code does not define the term "bona fide dispute", our Circuit has adopted a definition of bona fide dispute that would include "a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts." *B.D.W. Assoc. v. Busy Beaver Bldg. Ctrs.*, 865 F.2d 65, 66 (3d Cir.1989) citing *In re Lough*, 57 B.R. 993 (Bankr.

E.D.Mich.1986). It is virtually impossible to review the record of this proceeding and conclude that the alleged obligation by the partnership to Ms. Shinko was anything but "in dispute".

The substance of Ms. Shinko's claimed debt is alluded to in Exhibit E of Ms. Shinko's Answer to Miele's Motion for Sanctions. (Doc. # 7.) That Exhibit is a copy of a letter from Jayne Shinko to the Law Center/William Miele dated July 11, 2000. The letter makes demand on the Law Center/William Miele for an amount of $40,102.05 "as reflected on the last partnership return for 1991, as prepared April 15, 1992."

On April 10, 1992, William J. Miele, P.C. and Jayne Shinko entered into an Agreement Dissolving Partnership. (See Exhibit B attached to Mr. Miele's Motion for Sanctions (Doc. # 7).) The Agreement of dissolution identifies all the assets of the partnership. As to liabilities, paragraph 5 of the Agreement states, "[a]s of this date the partnership has no liabilities, other than normal operating expenses, accounting fees, quarterly payroll taxes, and partnership interests. All liabilities will be shared equally by the parties, with offset for the Second Partner's [Jayne Shinko] receivables deposited by First Partner [William J. Miele, P.C.], as itemized on Appendix 3." Paragraph 6 of the dissolution Agreement states, "Second Partner shall receive sole ownership and possession of the assets listed in Appendix 1. First

1.

ALLEGATION<br>(Check applicable boxes)

1. ☐ Petitioner(s) are eligible to file this petition pursuant to 11 U.S.C. § 303(b).
2. ☐ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.
3.a. ☐ The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute;

or

b. ☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

Partner shall receive sole ownership and possession of the assets listed in Appendix 2. It is acknowledged that the partnership furniture and equipment have not yet been evenly divided, but will be at the mutual convenience of the parties."

Finally, paragraph 20 of the Agreement provides, "[e]ach party agrees to the final and permanent distribution of the assets and liabilities herein contained. The parties acknowledge that this agreement is not intended to, and does not, divide or distribute the various pension, investment, and retirement accounts acquired during the operation of the partnership, but that those various accounts will be subject to equitable distribution."

The Uniform Partnership Act, as adopted in Pennsylvania, provides that the partners may agree as to the dissolution and liquidation of their partnership assets and only where they cannot agree must the provisions regarding liquidation of property be implemented. 15 Pa.C.S.A §§ 8360 and 8362. See also, *Wathen v. Brown*, 200 Pa.Super. 620, 189 A.2d 900 (1963).

According to the Master's Report to the Court, approximately one month after the dissolution Agreement, Jayne Shinko filed a Complaint in Divorce. (See Exhibit A to Motion for Sanctions (Doc. # 7).) Among the various matters assigned to the Master by the Common Pleas Court were various partition actions pending between the parties. On page 41 of the Master's Report, the Master addressed the pending partition actions involving the Law Center and concluded that the partition actions were "redundant and moot". The Master commented, "[w]ith regard to the partition of "The Law Center", the parties have already entered into an agreement for the dissolution of that partnership. The only outstanding issues reserved in that dissolution agreement were the division of certain

retirement and other accounts of the partnership which have been accomplished above [earlier in the Report] in equitable distribution."

The Master makes reference to Ms. Shinko's arguments that various partnership's accounts have yet to be reconciled. The Master dismissed this claim by concluding that the argument was "absolutely ludicrous". He reasoned, "[s]he entered into a valid Partnership Dissolution Agreement which addresses the dissolution of the partnership; no reconciliation or accounting is mentioned. Once the partnership is dissolved and divided, there is nothing left to dissolve or divide. This seems to be a simple proposition, but it has apparently been lost upon Ms. Shinko." (Master's Report to the Court at 42.) Based on this discussion, the Master issued various recommendations to the court. These were the recommendations that were affirmed by the state trial judge on August 12, 1997 and subsequently affirmed by the Superior Court.

■ Our Circuit has shown little reluctance in approving the dismissal of cases for bad faith in chapter seven (*In re Tamecki*, 229 F.3d 205 (3d Cir.2000)), chapter eleven (*In re SGL Carbon Corp.*, 200 F.3d 154, 161 (3d Cir.1999)), and chapter thirteen cases (*In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996)). Further, the Circuit has indicated that an involuntary bankruptcy petition lacking the statutory requirements will support a dismissal, a finding of bad faith, and appropriate sanctions upon the entity filing the petition. *Landon v. Hunt*, 977 F.2d 829, 833 (3d Cir.1992). The relevance of *Landon v. Hunt* is not insignificant. Jayne Shinko, the petitioning partner in this case, was a participant in a voluntary dissolution of the partnership. Virtually all of the property of the partnership was distributed pursuant to that dissolution Agreement, and the only re-

maining assets to be distributed were referred to the domestic court for determination. The Master in domestic relations made that determination. The Court of Common Pleas of Lycoming County approved the Report of the Master. That decision was affirmed by the Pennsylvania Superior Court and the Supreme Court of Pennsylvania denied allowance of appeal. If there were any partnership assets that were not, as yet, liquidated, Ms. Shinko had the vehicle by which she could enforce the dissolution Agreement or the equitable distribution order. To the extent that Ms. Shinko had, which she termed, a capital claim, the concepts of res judicata and collateral estoppel give ample reason to consider that her claim would, at least, have been disputed. For Ms. Shinko to argue that her claim was not in bona fide dispute as required by § 303(h) is beyond cavil. In fact, Ms. Shinko, a practicing attorney, was not willing to make such an allegation by checking the appropriate block in the Involuntary Petition. Rather, she ignored that portion of the Involuntary Petition despite the necessity of completing it. Perhaps, she tried to avoid the implications of Federal Rule of Bankruptcy Procedure 9011 by avoiding an incorrect assertion. Such nonfeasance, however, cannot shield Ms. Shinko from the implications of Rule 9011 since an individual's signature certifies not only that factual assertions have evidentiary support, but that the legal claims are warranted by existing law. According to Rule 9011, "by presenting to the court … a petition … an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, … it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." As was present in the case of *Cinema Service Corp. v. Edbee Corp.*, 774 F.2d 584 (3d Cir.1985), "[a]scer-tainment of the correct standing of accounts between two parties, particularly when both hold state judgments, is a matter for resolution in state court. The controversy did not involve any other creditor of the debtor, and the dispute clearly was not a proper subject for invocation of a bankruptcy proceeding." *Id.* at 586. Ms. Shinko's Petition against the defunct partnership, both on its surface and after scrutiny, is no more than an attempt, by a knowledgeable practitioner, to circumvent the course of state court adjudications. I am satisfied that the involuntary filing was unsupported by the facts or the law and that such was ascertainable by a layperson, and especially by a lawyer. This certainly constitutes the objectively unreasonable conduct needed to find a violation under Rule 9011. *Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc.*, 57 F.3d 1215, 1225 (3rd Cir.1995). Once I find that Ms. Shinko knew the debts of the "partnership" (to the extent there remained a partnership) were actually paid, with the alleged exception of her own highly disputed capital claim, I have no choice but to conclude that it was unreasonable for Ms. Shinko to file the Involuntary Petition and to impose upon her Rule 9011 sanctions. *Stuebben v. Gioioso (In re Gioioso)*, 979 F.2d 956, 961 (3d Cir.1992) ("where the court finds a violation of Rule 9011, the court must apply a sanction"). Of course, dismissal of the Petition is appropriate.

 In determining whether the Petition was filed in bad faith and, thus, whether additional sanctions under 11 U.S.C. § 303(i) are in order, I need not only rely on the objective unreasonableness of the filing of the Involuntary Petition, but also the subjective elements implicated in the Petitioner's motivation for such filing. 2 Lawrence P. King, et al., Collier on Bankruptcy ¶ 303.15[5][a] at

303–99 (15th ed. rev.2000). Considering foremost the historical sequence of events that led to the Involuntary filing, I would be hard pressed to conclude other than the Involuntary was filed solely to circumvent the state court determinations that Ms. Shinko had no further claim against William Miele, William Miele, P.C. or the Law Center. There appears to be strong evidence that the filing was a violation of the "spirit of the chapter". *In re Chinichian,* 784 F.2d 1440, 1445 (9th Cir.1986). As indicated, the partnership known as the Law Center had no further obligation to Jayne Shinko. Ms. Shinko's arguments as to the nature of this alleged obligation were raised before the Common Pleas Court during the domestic litigation, and the Agreement whereby she voluntarily dissolved and liquidated the partnership were fairly reviewed by that Court. I am convinced that Ms. Shinko's Petition in the Bankruptcy Court against the Law Center was ill advised and unsupported by the facts. Not only is the Law Center not obligated to Ms. Shinko, Ms. Shinko has been told as much by the Common Pleas Court, the Superior Court, and lastly the Supreme Court of Pennsylvania when they denied allowance of appeal.

■ 11 U.S.C. § 303(i) provides that the court may grant judgment against a petitioner and in favor of the debtor for costs, reasonable attorney's fees, and in the case of bad faith, for damages proximately caused by the filing as well as punitive damages. I am satisfied that costs, reasonable attorney's fees, and punitive damages are justified in this case for the frivolous filing initiated by Ms. Shinko. I hereby award reasonable costs, expenses and attorney's fees in favor of the Law Center under both Rule 9011 and 11 U.S.C. § 303(i). An itemization of such costs and fees shall be filed of record and served within fifteen (15) days of the date of this decision. Ms. Shinko shall have ten (10) days thereafter to register an objection to that itemization and request a hearing. I further assess Ms. Shinko the sum of $1,000 as punitive damages under both Rule 9011 and § 303(i) inasmuch as her conduct in filing the Petition was not only objectively unreasonable, but malicious and vengeful.

A similar Involuntary Petition was filed by Ms. Shinko against Jayne Shinko–William Miele Rentals, a partnership. The facts are identical except that Ms. Shinko and Mr. Miele did not enter into a dissolution agreement regarding this partnership. An examination of the record reveals that this distinction is not material to my disposition of that Petition.

According to Judge Keller's Opinion in affirmance of the Master's Report, "In 1995, Plaintiff [Jayne Shinko] filed two Partition actions against Defendant [William Miele] requesting partition of assets from two separate partnerships (the Shinko–Miele Housing partnership [Jayne Shinko—William Miele Rentals] and the Law–Center partnership). These Partition actions were consolidated with the Divorce action." (Opinion dated August 12, 1997 and attached as Exhibit A to Ms. Shinko's Answer to Miele's Motion for Sanctions at 2 (Doc. # 12).) In Pennsylvania, partition actions are not ripe until the partnership is terminated. 23 Standard Pa. Prac.2d § 122:39 (1997) (During the existence of a partnership, there can be no partition of partnership real property. In order for partnership real property to be subject to partition, it is necessary that there be a termination of the partnership and a settlement of the partnership affairs; the property is not subject to partition until such a settlement has occurred.). The fact that the partition actions were advanced and consolidated with the equitable distribution action bespeaks an earlier termination of Shinko–Miele Realty. In fact, Ms. Shinko's efforts to challenge the distribution of partnership assets were di-

rectly addressed by the Pennsylvania Superior Court since they answered the following question on review:

> Did the trial court err in summarily dismissing [appellant's] accounting/partition actions regarding the premarital partnerships, and in refusing to account and distribute the partnership assets and income of both partnerships under the Uniform Partnership Act, despite the orders of coordinate courts consolidating the actions in accounting/partition with equitable distribution?

Exhibit B to Petitioner's Reply to Answer to the Involuntary Petition and Answer to the Motion to Dismiss (Doc. # 13).

Simply stated, the Superior Court answered that question in the negative.

In revisiting the issue of whether the Involuntary Petition in Jayne Shinko–William Miele Rentals should be granted, I am again confronted with the obvious fact that the only debt raised by Ms. Shinko as owing by the partnership is her own capital account, notwithstanding the fact that Ms. Shinko alleged, in this Petition, that the partnership was generally not paying its debts as they became due unless they were subject to bona fide dispute. Clearly, the supposed obligation, which has been subjected to serious dispute and adverse ruling, is in bona fide dispute. While a dissolution agreement has not been executed regarding Jayne Shinko–William Miele Rentals, Rule 9011 is clearly implicated and, finding a violation, requires me to impose an additional sanction. I, again, assess attorney's fees and costs against Jayne Shinko.

Concluding that dismissal of this Petition is in order, I see little point in considering additional sanctions.

An Order will follow.