

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-1-2004

# In Re: Amoroso

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4061

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"In Re: Amoroso " (2004). *2004 Decisions.* Paper 157.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/157

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 03-4061

IN RE:

GAYLA ANN AMOROSO,
Debtor

ERIC L. LEINBACH

v.

BARBARA FEIN

FREDERICK L. REIGLE,

Trustee

Gayla Ann Amoroso;
Eric L. Leinbach,

Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court Civil No. 01-cv-05443)
District Court: Hon. R. Barclay Surrick

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 20, 2004

Before: McKEE <u>Circuit Judge</u>, ROSENN and WEIS,
<u>Senior Circuit Judges</u>.

OPINION

McKEE, Circuit Judge.

Eric L. Leinbach, Esq., represented Gayla Ann Amoroso when she filed for bankruptcy in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania in 1998. The bankruptcy court sanctioned Leinbach for improper behavior during those proceedings and required him to compensate opposing counsel $5,512.50 for the unnecessary work that resulted from Leinbach's sanctionable conduct. Leinbach appealed the sanction to the district court, which affirmed. He now appeals to us.[1] We will also affirm, although we will affirm one of the bankruptcy court's rulings on grounds that differ from the bankruptcy court's analysis.

## I. FACTS and PROCEDURAL HISTORY

In the Chapter 13 bankruptcy petition Leinbach filed in April 1998, he listed North American Mortgage Company ("NAMC") as a secured creditor holding a lien on Amoroso's residence. Andrew Clearfield, Esq., entered his appearance on NAMC's behalf later that month.[2] In February 2000, Barbara Fein, Esq., filed a motion entitled "Motion for Relief from the Automatic Stay" on NAMC's behalf. She identified herself as NAMC's counsel by her signature on the motion. However, she never formally

---

[1] The respondent in the underlying case, opposing counsel Barbara Fein, has formally given notice to this court that she is not participating in the appeal.

[2] Leinbach claims in his brief, and the district court states in its opinion, that two law firms entered their appearance on NAMC's behalf. However, the only notice of appearance that is apparent from the record on appeal is reflected at entry #11 stating that Andrew D. Clearfield appeared for NAMC.

entered her appearance.

In any event, Leinbach and Fein entered negotiations to resolve Amoroso's debt to NAMC. Thereafter, Leinbach filed an amended plan[3] in an attempt to resolve that debt. That plan was purportedly based on an agreement Leinbach had reached with Fein, and Leinbach subsequently filed a motion to approve the plan on February 16, 2000. The motion was served on NAMC's then counsel of record, but not Fein. Fein did receive a copy of the amended plan, as well as notice of the motion to approve, but she never received a copy of the motion itself. Fein and her office then contacted Leinbach's office several times via telephone and facsimile in an attempt to get a copy of the motion, but Leinbach never sent one. Instead, Leinbach filed a Certification of no Response to his motion to approve the plan even though Fein's office was attempting to obtain a copy of the motion. Unaware of Fein's efforts, the court granted Leinbach's motion to approve the plan in an order dated March 8, 2000.

On March 27, 2000, Fein filed a motion to vacate the March 8, 2000 order. The motion to vacate alleged that Fein had not been able to respond to the motion to approve the plan because she never received a copy of the motion. During the ensuing hearing on the motion to vacate, Leinbach testified that Fein was not on his office's list to receive a copy of the motion because she was not counsel of record. According to his testimony, he therefore did not believe he was required to serve her with a copy, even though he and

---

[3] This was the third amended plan.

Fein had been involved in discussions regarding Amoroso's obligation to NAMC. *See* June 15, 2000 Tr. at 86-88. After hearing the testimony, the court granted Fein's motion and gave her and her client a new opportunity to review the proposed amended plan.[4]

In November 2000, Fein moved for sanctions against Leinbach under Federal Bankruptcy Rule 9011, arguing that he: (1) failed to serve her with a copy of the motion to approve; and (2) filed a certification of no opposition knowing that she had not had an opportunity to respond to the motion. Leinbach opposed the motion, but the bankruptcy court granted the motion in an order dated July 3, 2001. It found that Leinbach had engaged in "improper, vexatious, wanton and bad faith conduct." It based this finding on the fact that Leinbach failed to serve Fein with a copy of Amoroso's motion to approve the third amended plan despite his knowledge that "Fein's client had a substantial interest in the outcome of the motion to approve" as a secured creditor, and the fact that Leinbach filed a certification of no opposition to the motion although he knew that Fein had not received a copy of it. Order at 1-2 nn.1-2.

The bankruptcy court sanctioned Leinbach pursuant to its inherent powers for failing to serve Fein with the motion, and it also sanctioned him pursuant to Rule 9011 for filing the certification of no response. *Id.* at 2 n.2. As noted at the outset, the court required Leinbach to pay Fein $5,512.50. That sum was derived from a review of the

---

[4] Fein reserved the right to later request sanctions against Leinbach at the hearing. *Id.* at 98.

billing invoices that Fein had attached to her motion for sanctions. The court explained

its order as follows:

> [T]his sum represents $4987.50 in fees incurred by. . . Fein
> and $525.00 in costs incurred by Fein from the date
> [Leinbach] filed Debtor's motion to approve the third
> amended plan up until the June 15, 2000, hearing on [the]
> motion to vacate this court's March 8, 2000 Order. . . .
> Moreover, we find these fees and costs as well as the hourly
> rate charged by Fein to be reasonable.

*Id.*

As noted above, Leinbach appealed the sanctions to the United States District

Court for the Eastern District of Pennsylvania. He argued that the bankruptcy court

abused its discretion in imposing sanctions and that the court violated his due process

rights. The district court affirmed and concluded that Fein's motion and the bankruptcy

court's hearing on it provided the particularized notice and opportunity to respond that

due process requires. This appeal followed.[5]

## II. DISCUSSION

### A. Evidentiary support for sanctions

Leinbach first argues that there is insufficient evidence to support the bankruptcy

court's sanction. He argues in the alternative that even if the record does support

---

[5] We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291. "We review the bankruptcy court's findings of fact for clear error, and we exercise plenary review over conclusions of law. We review the denial of attorney fees and the denial of costs for abuse of discretion. *In re Gioioso*, 979 F.2d 956, 959 (3d Cir. 1992) (internal citation and quotations marks omitted).

sanctions, the court abused its discretion in imposing this specific sanction upon him.[6]

The bankruptcy court imposed sanctions pursuant to its inherent authority to sanction as well as Federal Rule of Bankruptcy 9011. A court must make a finding of bad faith before imposing sanctions pursuant to its inherent power to sanction attorneys. Sanctions under Rule 9011 can be imposed for objectively unreasonable conduct. *Fellheimer, Eichen & Braverman v. Charter Tech.*, 57 F.3d 1215, 1227-28 (3d Cir. 1995) (internal citations omitted). This record clearly supports the court's finding of bad faith. In addition, Leinbach's conduct clearly was objectively unreasonable.

### 1. Finding of bad faith

The bankruptcy court found that Leinbach's failure to serve Fein with a copy of

---

[6] Leinbach's counsel argues in part that the only evidence in the record regarding Fein's motion for sanctions came from the brief testimony that Leinbach gave at the hearing on Fein's motion, and that the courts erred when they relied on other evidence. That argument is frivolous. The hearing on the motion for sanctions was preceded by a hearing on the motion to vacate the court's order approving the amended plan. During the earlier hearing, Leinbach testified at length regarding his reasons for not serving Fein with a copy of the motion to approve the amended plan. Fein also offered various faxes and other communications between her and Leinbach to show that Leinbach knew that Fein wanted a copy of the motion and planned to oppose it. *See* June 15, 2000 Tr. at 47-49, 52-56, 84-86. At the later hearing on the motion for sanctions, Leinbach's attorney protested against him needlessly testifying again. Leinbach's counsel requested an offer of proof regarding Fein's reasons for calling Leinbach to the stand again because "[w]e sat here four hours last time and had him testify to everything that appears to be discussed in the motion." January, 18, 2001 Tr. at 4.

Leinbach now attempts to use the absence of his testimony at the second hearing as grounds for reversing the sanctions order. That argument appears to be yet another manifestation of what might best be described as Leinbach's proclivity for avoiding candor with the court.

6

the motion was "improper, vexatious, wanton and bad faith conduct[]" because Leinbach

knew that Fein's client had a "substantial interest in the outcome of the motion[.]"  The

court also found that Leinbach had a duty to furnish Fein with a copy of the motion upon

her request under Local R. Bankr. 9014-3(g)(2) (E.D. Pa. 1999). Bankr. Op. at 2.

The district court agreed, concluding that Leinbach's actions "over the course of a

four-month period demonstrate sufficient bad faith to support the bankruptcy court's

decision to impose sanctions." Dist. Ct. Op. at 7-8.  The district court expanded on the

bankruptcy court's rationale detailing the numerous exchanges between Leinbach and

Fein regarding the amended plan.  The court also noted Leinbach's assertion that counsel

who only enters an appearance for a party by filing a document or motion is not

necessarily entitled to service of all papers unrelated to the specific motion filed by that

attorney.  *Id*. at 8.  The court rejected that claim because the motion in question was

directly related to Fein's negotiations with Leinbach.  *Id*.  Finally, the district court stated

that it did not need to decide whether Fein was an attorney of record and therefore entitled

to service under Local R. Bankr. 9014-3(f) (E.D. Pa. 1999).[7] *Id*. at 9-10.

---

[7] Local R. Bankr. 9014-3(f)(1) and (g)(2) state:
(f) Service of Motion.  (1) General.  On the day the motion is filed, the movant
shall serve a Notice of Motion and Hearing Date. . . , the proposed order, and a
copy of the motion . . . on . . .:
    (I) the debtor and counsel to the debtor;
    (ii) the United States trustee;
    (iii) any trustee or interim trustee;
    (iv) any official committee or, if no committee has been appointed in a
    chapter 11 case, the twenty (20) largest unsecured creditors of the debtor;

We are in substantial agreement with the district court's analysis. Leinbach refused to give Fein a copy of a motion that significantly affected her client's interests even though that motion was a product of his recent negotiations with Fein. He compounded this transgression by informing the bankruptcy court that his motion was unopposed even though he knew that Fein had not seen it and had contacted his office to get a copy of it. We need not dignify Leinbach's continued insistence that this does not establish bad faith with any further discussion.

There is, however, a problem with invoking Rule 9014-3 to sanction this conduct because it is not clear that the Rule required Leinbach to serve Fein with a copy of the motion. Bankruptcy Rule 9014-3(g)(2) requires the movant to provide a copy of motions

> (v) any person whose interest would be directly, materially and adversely affected if the relief requested in the motion were granted and whose interests are not adequately represented by persons on whom service is otherwise required.
> . . .
> (g) Notice. . . . (2) The notice shall be given to those on the Clerk's Service List who are not required to be served under subdivision (f). A movant, at the movant's expense, shall promptly furnish a copy of the motion and proposed order to anyone on the Clerk's Service List who requests a copy of the particular motion. A movant may make service in the manner provided in subdivision (f) instead of giving notice under this subdivision.

Local R. Bankr. 2002 describes the "Clerk's Service List" as follows:
> (c) Clerk's Service List. The clerk shall maintain a Clerk's Service List which lists the name, address, phone number, and fax number of the debtor, counsel for the debtor, the trustee, counsel for any committee and the members of the committee, and all creditors and equity security holders who have filed requests that all notices be mailed to them under F.R.B.P. 2002(I).

8

"to anyone on the Clerk's Service List."  That list includes the debtor and counsel, the trustee, "counsel for any committee and the members of the committee, and all creditors and equity security holders who have filed requests that all notices be mailed to them under F.R.B.P. 2002(I)."  Fein represented a secured creditor, but it is undisputed that she did not file a formal notice of appearance or otherwise formally request filings through the clerk's office.  It appears from the record that no committee was formed.  Fein would therefore not qualify under that category, either.  Accordingly, Fein would not have been on the Clerk's Service List, and Rule 9014-3(g)(2) would therefore not have required Leinbach to provide her with a copy of his motion.

However, to the extent that the bankruptcy court erred in relying upon that Rule, the error was certainly harmless.  Local R. Bankr. 9010.1(a) (E.D. Pa. 1998),  9010.1(a) (E.D. Pa. 1999), and 9010-1(c) (E.D. Pa. 2000) all state that "an attorney who files any. . . motion . . . or other paper with the clerk shall be deemed to have entered an appearance for the party on whose behalf the paper is filed."  Therefore, pursuant to those Local Bankruptcy Rules, Fein is deemed to have entered an appearance by virtue of the filing she made on behalf of NAMC on February 4, 2000.  Moreover,  Fed. R. Bankr. 9010(b) (1998), 9010(b) (1999), and 9010(b) (2000) all provide in relevant part as follows: "Notice of appearance.  An attorney appearing for a party in a case under the [Bankruptcy Code] shall file a notice of appearance with the attorney's name, office address and telephone number, *unless the attorney's appearance is otherwise noted in the record*."

9

(emphasis added). Clearly, Fein's appearance was "otherwise noted in the record" as of February 4, 2000. Accordingly, there is sufficient evidence on this record to support the bankruptcy court's sanctions.

## 2. Finding of unreasonable conduct

The bankruptcy court also sanctioned Leinbach under Fed. R. Bankr. P. 9011 for improperly executing the certification of no opposition.[8] The court explained that sanction as follows:

> [Leinbach] certified that the notice of motion, response deadline and hearing, along with a copy of the motion to approve [the amended plan] had been served on all interested parties and that he received no opposition to the motion, all the time knowing that he had not served Fein with a copy of the motion . . . despite the repeated requests made by Fein to [Leinbach] for a copy of the motion.

Bankr. Op. at 2 n.2.

The district court concluded that Leinbach could not have reasonably believed that there was no opposition to the amended plan, yet his certification of no opposition represented that there was none. Dist. Ct. Op. at 12-13. We agree that Leinbach's certification under these circumstances was, at the very least, objectively unreasonable. Sanctions were therefore appropriate.

---

[8] Fed. R. Bankr. 9011 is the bankruptcy analog to Fed. R. Civ. P. 11. *See Fellheimer, Eicher & Braverman*, 57 F.3d at 1220 n.2; *Landon v. Hunt*, 977 F.2d 829, 833 n.3 (3d Cir. 1992); *see also Haymaker v. Green Tree Consumer Disc. Co.*, 166 B.R. 601, 606 (Bankr. W.D. Pa. 1994) ("Rule 9011 is designed to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation.").

10

### 3. Exercise of discretion

Because the findings of bad faith and objective unreasonableness were not in error, the district court had discretion to impose sanctions pursuant to its inherent authority and under Rule 9011. Moreover, we agree that there is a direct correlation between the sanctions against Leinbach and the injury he caused. Although Fein asked for more, the court only ordered Leinbach to pay Fein for the unnecessary hours she billed her client attempting to obtain a copy of the motion, having the order approving the plan vacated, and filing the motion for sanctions. The court thus ensured the compensatory and equitable quality of the sanctions because Fein's client was relieved of the costs that specifically resulted from Lienbach's conduct. This was not an abuse of discretion.

### B. The Due Process Claim.

Leinbach also argues that the sanctions were imposed without due process because he was denied an opportunity to respond or present evidence to rebut Fein's allegations either at the hearing on the motion for sanctions or at the hearing on the motion to vacate. He adds that the issue of the certification of no opposition was not raised at either hearing, and he therefore had no way of knowing of that basis for sanctions nor defending against it.

Prior to imposing sanctions on an attorney, a court must provide particularized notice, and some opportunity to respond, in order to afford due process. *Fellheimer, Eicher & Braverman*, 57 F.3d at 1225 (internal citations and quotation marks omitted).

11

Here, Leinbach was provided with both.

### 1. Particularized notice

Leinbach was alerted to the problems with his certification at the hearing on the motion to vacate. Fein asked Leinbach on direct examination whether he had represented to the court that the motion to approve the plan was unopposed. June 15, 2000 Tr. at 67. Leinbach responded that he had. *Id.* Fein then asked Leinbach: "Why, sir, would you do that if you knew that I had been trying to get a copy of the motion . . . from you for over a month and a half?" Undaunted by the now apparent attack on his candor and ethics, he responded: "Because no opposition was received." *Id.*

Although problems with the certification were not raised at the hearing on the motion for sanctions, they clearly had been raised at the earlier hearing on the motion to vacate and we have already explained why that testimony was sufficient to support the sanctions the court imposed. *See* note 6, *supra*. Moreover, Fein specifically resolved the right to file for sanctions at the conclusion of the hearing on the motion to vacate.

Leinbach had to have known that the bankruptcy court's order approving the amended plan was the result of his certification. He clearly knew that the court's order vacating its prior approval was the direct result of the court learning that Fein had been attempting to get a copy of the amended plan from Leinbach. It is therefore disingenuous for Leinbach to now suggest that he was somehow surprised by the sanctions the bankruptcy court imposed as a result of his representation and certification.

12

**2. Opportunity to respond**

We are similarly unpersuaded by Leinbach's claim that he did not have an opportunity to respond. Neither he nor his counsel availed themselves of the opportunity they had to present evidence in response to the motion for sanctions. As the district court correctly notes, Leinbach's attorney "refused to call any witnesses or offer any exhibits into evidence at the later January 18, 2001 motion for sanctions hearing." Op. at 11 (also, see January 18, 2001 Tr. at 11.). Nor did Leinbach or his counsel object that they were not being allowed to present certain evidence or otherwise proceed as they wished. The bankruptcy court went out of its way to be fair and allowed an opportunity to submit additional memoranda up to 10 days after the motion for sanctions hearing. January 18, 2001 Tr. at 3, 16-17.

**C. Basis for monetary sanctions**

Finally, Leinbach claims that, even if sanctions were proper, the bankruptcy court erred in imposing the particular sum of $5,512.50 because "the record does not contain any evidence upon which to calculate any monetary amount." Appellant's Br. at 14. Leinbach states that the only basis for these sanctions were the documents attached as exhibits to Fein's motion calculating the amount she charged her client for the unnecessary work resulting from Leinbach's problematic filings. Leinbach argues that because these exhibits were not stipulated by the parties or admitted into evidence, they cannot support the court's sanctions.

13

However, Leinbach does not appear to have made this argument in the bankruptcy court or district court and it is therefore waived. Even if this claim had not been waived, it would be without merit. The bankruptcy court specifically found that Fein's hourly rate was reasonable, Op. at 1 n.1. The court then determined the number of hours that related to Leinbach's improper conduct, and thereby calculated the amount Leinbach's sanctionable conduct cost Fein's client. The bankruptcy court acted appropriately in accepting Fein's affidavit and reviewing the hourly rate and hours charged to determine if they were reasonable. The court concluded that both were, and ordered Leinbach to pay that amount as a sanction for his conduct. There was neither error nor an abuse of discretion.

### III. CONCLUSION

For the reasons stated herein, we will affirm the order of the district court upholding the bankruptcy court's imposition of sanctions in the amount of $5,512.50.