**Alvaro QUIROGA, Appellant,**

v.

**HASBRO, INC. and Playskool Baby, Inc.**

**Nos. 90–5284, 90–5748.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) On May 31, 1991.

Decided June 11, 1991.

Rehearing and Rehearing In Banc Denied July 5, 1991.

*et seq.,* and state claims for breach of contract and intentional infliction of emotional distress. Just before trial, the district court granted summary judgment for defendants on all but the Title VII and comparable NJLAD claims. These remaining claims alleged Quiroga, a vice-president of Hasbro, was wrongfully denied stock options in 1988, and was discharged in retaliation for asserting his rights to those options. Following trial, the district court entered judgment in favor of Hasbro. Upon post-trial motion by Hasbro, the district court also ordered Quiroga to pay Hasbro's attorneys' fees in the amount of $10,000 under Section 706(k) of Title VII. 42 U.S.C. § 2000e–5(k).

Quiroga claims in appeal No. 90–5284 that the district court's trial findings are clearly erroneous and that the district court ignored issues of material fact in its summary judgment. In appeal No. 90–5748, Quiroga claims the district court abused its discretion by awarding Hasbro attorneys fees. We will affirm the district court's orders appealed in No. 90–5284, and for the reasons following we will remand on appeal No. 90–5748. The case is quite simple and ordinarily we would not write, but it is necessary here to explain our decision on appellant's challenge to the district court's attorney fee award.

Stephen R. Mills, Livingston, N.J., for appellant.

James M. Paulson, Morgan, Brown & Joy, Boston, Mass., for appellees.

Before HUTCHINSON, NYGAARD and ROSENN, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

In the case underlying these consolidated appeals, Alvaro Quiroga instituted an action against Hasbro and its subsidiary, Playskool Baby, Inc. (collectively, "Hasbro") alleging violations of Title VII, 42 U.S.C. §§ 2000e–2000e–17, the Age Discrimination In Employment Act, 29 U.S.C. §§ 621–634, the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–1,

I.

## APPEAL NO. 90–5284

### A. SUMMARY JUDGMENT.

█ The district court summarily dismissed many of Quiroga's claims, including the claim that Hasbro's Personnel Policies Manual ("manual") gave Quiroga contractual rights that Hasbro violated when it discharged him. Quiroga challenges only that portion of the summary judgment. He contends that whether the manual applies to him is an unresolved, material question of fact precluding summary judgment, and that the district court misapplied New Jersey law regarding contractual rights created by the manual when it dismissed his claim for breach of contract.

Our review of a summary judgment is plenary.

Quiroga's contentions are without support in the record because it does not show that the manual applied to Quiroga as vice-president and plant manager. The affidavit of William Daly, Hasbro's vice president in charge of industrial relations, states that the guide is intended for use by supervisors and managers to assist them in managing personnel matters of the rank and file employees and does not create rights for supervisors or managers. Daly also stated that unless a specific written employment contract is in place, managers are employed at will. There is nothing in the record to dispute that evidence.

█ Daly's affidavit carried Hasbro's burden under Rule of Civil Procedure 56 because, in response to Daly's affidavit, Quiroga says only that he was not informed the manual did not apply to him. This does not create a dispute of fact. Quiroga must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Quiroga must set forth specific facts showing a genuine issue for trial and may not rest upon mere allegations, general denials, or such vague statements that he was never informed that the manual did not apply to him. He must offer some evidence that the manual does indeed apply to him. *Soundship Building Company v. Bethlehem Steel,* 533 F.2d 96, 99 (3d Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). Quiroga has simply offered no such evidence. Since Quiroga has not shown that the manual applies to him, we need not consider his contention that the district court misapplied New Jersey contract law. We hold that Quiroga's objection to the summary judgment is without merit.

## B. TRIAL FACTS.

Following a bench trial on the remaining claims the district court found the following facts which are germane to its decision and our review. Quiroga was a valued employee of Hasbro and its corporate predecessors from 1974 until he parted company with them in May, 1988. As vice president of operations in Hasbro's Wayne, New Jersey plant, Quiroga was second-highest ranking employee in New Jersey.

Quiroga received a stock option award in 1986. In 1987 he committed the Wayne plant to production far beyond the company's manufacturing plan. Because of the overproduction, Hasbro sustained losses and seriously considered closing the plant. It did not close the plant, but as a consequence of overproduction, management did not recommend Quiroga for a stock option award for 1987. When in early 1988 Quiroga learned he would not receive the award, he complained to his superiors. Because Hasbro considered Quiroga to be a key person, management reconsidered and added Quiroga's name to the list of those recommended for stock options.

During 1987 there were rumblings between Quiroga and Hasbro's management. Quiroga found himself in disagreement with management decisions. He was disappointed with their decision not to relocate the New Jersey plant to South Carolina, where Quiroga was to have been plant manager. Quiroga viewed Hasbro's decision to scuttle the relocation as a failure to promote him. He was affronted by Hasbro's relocation of his responsibilities to others. He also incorrectly believed he was to be denied a stock option award, and ·so early in 1988, he hired an attorney. What happened thereafter cost Quiroga his stock options and his job.

Quiroga's attorney, Stephen R. Mills, wrote a letter to Hasbro that the district court found to be "heavy handed" and "extraordinary and outlandish." Attorney Mills claimed that Quiroga had been "constructively discharged" and suggested a meeting to explore "specific proposals for an outplacement arrangement" for Quiroga and "a possible settlement of Mr. Quiroga's claims." App. 401. The district court found the letter to be Quiroga's announcement that he was "depart[ing] from the company." App. 402.

Nevertheless, and in spite of Attorney Mills' letter, "Hasbro was anxious to retain [Quiroga] in its employ as he was still considered to be an important executive." App. 402. Quiroga, Mills and representatives of Hasbro all met in response to Attorney Mills' letter. At the meeting, Mills stated Hasbro had breached its "trust bridge" with plaintiff. App. 403. Mills issued a seven-point ultimatum to Hasbro:

1. Quiroga would remain at the plant during the "transition" period.

2. Quiroga's package would be $112,-000, excluding the company automobile.

3. Quiroga would agree to a release, waiving any claims against Hasbro.

4. Quiroga would seek 3-1/2 years of salary and benefits, totalling $392,000 plus $50,000 in lost options. No attorney's fees would be sought.

5. Quiroga would act as a consultant at half his annual salary, if desired by Hasbro.

6. Hasbro would continue Quiroga's health, dental and life insurance benefits for 18 months.

7. Quiroga would make a statement to all employees.

App. 403-404, 607.

Because of the brash ultimatum issued by his attorney, Quiroga's name was removed from the list of those to receive stock options, which were reserved to reward and encourage employees to stay with the company. Hasbro further informed Quiroga that it accepted his "wishes to resign." App. 405.

## C. RETALIATORY DISCHARGE.

■ Quiroga contends that Hasbro's actions amounted to a retaliatory discharge. In order to recover on his retaliatory discharge claims, Quiroga must show, (1) he engaged in a protected activity; (2) he was discharged after or contemporaneous with the activity; and (3) a causal link existed between the protected activity and threats to sue, and the loss of his job. *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989), *cert. denied*, — U.S. —, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990).

■ If a retaliatory discharge plaintiff makes a prima facie showing of all three *Jalil* factors, then the burden "shifts to the defendant 'to articulate a legitimate, non-discriminatory reason for its conduct.'" *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citation omitted).

■ The district court found that Quiroga utterly failed to establish the third *Jalil* factor, namely causation, and therefor concluded it was unnecessary for the court to reach the second *Jalil* factor, that is whether Quiroga was in fact discharged by Hasbro. Quiroga challenges this conclusion. His argument is essentially that "the timing [of his discharge] would raise an inference of retaliation." (Appellant's Brief at 21) As a matter of fact it cannot. In *Jalil* the employee was discharged two days after filing his Equal Employment Opportunity Commission ("EEOC") complaint. While we held there that the "timing of the discharge in relation to Jalil's EEOC complaint may suggest discriminatory motives," *Jalil*, 873 F.2d at 709, we stopped short of creating an inference based upon timing alone.

■ The district court specifically found that Hasbro's decision to dismiss Quiroga (or accept his resignation) was not caused by Quiroga's claims of discrimination or threats to sue. The district court found that Hasbro considered Quiroga to be an important and valued member of their management team. Indeed, Hasbro considered Quiroga's Hispanic origin and Spanish language ability an asset in light of the heavily Hispanic work force at the Wayne, New Jersey plant. When Quiroga's attorney voiced complaints of discrimination in the letter to Hasbro, Hasbro did not retaliate against Quiroga. Rather, the company (1) investigated the claims made in the attorney's letter; (2) attempted unsuccessfully to discuss Quiroga's concerns with him; (3) instructed Hasbro's personnel department to tell Quiroga Hasbro understood his wish to leave, but that the company wanted to resolve the problems and keep him employed; and (4) met with Qui-

roga and Attorney Mills. Yet, at that very meeting Mills and Quiroga slammed the door and made plain what they said in their letter—that Quiroga would not continue with the company. The district court found that the use of the expression "outplacement arrangement," both in the letter and at the meeting, could only be interpreted as meaning that Quiroga was departing from Hasbro. App. 402.

Following the meeting, Hasbro's management decided it was in the company's best interest to respect Quiroga's desire to quit. Hasbro concluded that any person holding the important position of plant manager should, unlike Quiroga, be willing to remain long-term.

The district court found that Quiroga failed to establish his claims, and his action was "utterly without basis in law or in fact." App. 409. The district court determined that Quiroga's losses of his stock options and ultimately his job were the result of Attorney Mills' "outlandish" letter and not in retaliation for anything. App. 407.

We hold that the court's findings are not erroneous. The district court had the unique opportunity to judge the credibility and demeanor of Quiroga and Hasbro's witnesses. It chose to credit Hasbro's account of why the company acted as it did. It took Quiroga's statements in the letter and the meeting at face value. Additionally, Quiroga presented only his subjective belief, but absolutely no supporting evidence that Hasbro's motives were improper. Hence, Quiroga simply has no basis to challenge the district court's finding on causation. Accordingly, the belated assignments of error on appeal are without merit.

## II.

### APPEAL NO. 90–5478: ATTORNEYS' FEE AWARD.

#### A.

Hasbro filed a post-verdict motion for attorneys' fees under Section 706(k) of Title VII. The motion was supported by an affidavit of William F. Joy, Jr., a partner in the law firm of Morgan, Brown and Joy, counsel for Hasbro in this matter. Attorney Joy's firm sought compensation in the total amount of $125,393.32 for 904 hours of attorney and paralegal time, as well as disbursements. The district court heard arguments on the motion but deferred its ruling and instead ordered that Quiroga provide certain financial information in answers to interrogatories submitted by Hasbro. After Hasbro completed discovery and the court heard arguments, it awarded Hasbro the sum of $10,000 in attorneys' fees under Section 706(k) of Title VII.

Title VII, § 706(k) provides as follows:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs, ....

42 U.S.C. § 2000e–5(k).

The standard used to determine whether a request for attorneys' fees by a prevailing defendant should be approved is stated in *Christiansburg Garment Company v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978):

A district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.

Furthermore, the district court must "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421, 98 S.Ct. at 700. We must defer to the district court's fee determination unless it has erred legally, *see Hughes v. Repko*, 578 F.2d 483, 486 (3d Cir.1978), *holding modified, Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177 (3d Cir.1983), or the facts on which the determination rests are clearly erroneous, *see Baker Indus., Inc. v. Cerberus, Ltd.*, 764 F.2d 204, 209–10 (3d Cir.1985).

■ Under the *Christiansburg* standard, Hasbro is entitled to be awarded attorneys' fees only if Quiroga's action was frivolous, unreasonable, or without foundation. *Christiansburg*, 434 U.S. at 421, 98 S.Ct. at 700. *Christiansburg* qualified those terms by equating "meritless" with "groundless" or "without foundation," and did not "impl[y] that the plaintiff's subjective bad faith is a necessary prerequisite to a fee award against him." *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. at 700–01. Hence, under *Christiansburg*, even if Quiroga's action was not brought in subjective bad faith, since Hasbro prevailed, it is entitled to attorney's fees upon a finding that the Quiroga's action was meritless, frivolous, unreasonable, or without foundation.

Quiroga's first argument on appeal is essentially that his claim had legal foundation and was not frivolous, and that the district court's factfindings to the contrary are clearly erroneous. The district court found not only that Quiroga's claims were without foundation or groundless, but also that his attorney "tried to force plaintiff's various grievances into the framework of various state and federal causes of action." App. 408. The court found that the "national origin" basis of Quiroga's cause of action "appears to have been an attorney construct." App. 408. The district court found Quiroga's claims to be "utterly without basis." App. 409. The district court concluded "[i]t was just a baseless case, the kind which should not be brought, and therefore [if] Mr. Quiroga can afford attorney's fees he should pay them." Supp. App. 65–66. These findings of the court are not clearly erroneous and, therefore, provide a basis for the Title VII attorney fee award.

Quiroga's second argument is that our decision in No. 90–5284 is irrelevant to our decision in No. 90–5748 because "Hasbro cannot establish, on the record before the District Court, any evidence establishing bad faith and/or frivolity by Quiroga either at the time this action was filed or during the period from the filing of the complaint until trial." Appellant's Brief at 11. Quiroga relies upon our decisions in *Ford v.*

*Temple University*, 790 F.2d 342 (3d Cir. 1986) (Attorneys' fees may be assessed against plaintiff's attorney under an exception to the general rule that each party to a lawsuit bear its own attorney's fees or 28 U.S.C. § 1927 only upon a finding of willful bad faith on the part of the offending attorney) and *Williams v. Giant Eagle Markets*, 883 F.2d 1184, 1190 (3d Cir.1989) (Attorneys' fees may not be assessed against a party under 28 U.S.C. § 1927). But these cases do not control because the district court awarded fees under Title VII. As Quiroga's own brief (page 8) acknowledges, Hasbro need not establish bad faith to win fees under Title VII. *Christiansburg* authorizes an award of attorney's fees to Hasbro in this Title VII case upon a finding that Quiroga's action was frivolous, unreasonable, or without foundation.

The Court in *Christiansburg* did not quantify the evidence an unsuccessful plaintiff must produce to escape an adverse award of fees. There is no need for more precise line-drawing in this case. The district court found not only that Quiroga's claims were "utterly without basis in law or in fact," but that preliminary investigation would have shown this to Quiroga and his attorney as they prepared their action. App. 409. The district court also found that Quiroga's discrimination claim "appears to [be] an attorney construct." App. 408. These findings are more than sufficient to justify the award of fees to Hasbro.

■ It is clear from *Christiansburg* that attorney's fees are not routine, but are to be only sparingly awarded. Nevertheless, here the same judge who presided over all proceedings also determined the fee award. Thus, that judge was "particularly well qualified to make the partially subjective findings necessary for [an] award of attorney's fees." *P. Mastrippolito & Sons, Inc. v. Joseph*, 692 F.2d 1384, 1387 (3d Cir.1982). Because the district court offered compelling reasons to conclude Quiroga's action was frivolous, and to substantiate its decision on fees, we will affirm.

## B.

In accordance with Hasbro's motion, the district court assessed fees against only the plaintiff Quiroga. We believe that, notwithstanding the limitations of Hasbro's motion, the district court should consider whether the fees should also be levied against Quiroga's attorney.

We believe that in light of the district court's findings in this case, the filing of Quiroga's complaint without any foundation in law or fact was as much Attorney Mills' fault as it was Quiroga's. Mills, as a trained lawyer, should have known better. He proceeded with an obviously frivolous lawsuit, after having put his client's job and future at great risk, and also subjected the parties and the court to unnecessary expense and inconvenience.

■ Title VII gives the district court considerable discretion to award fees, *see* 42 U.S.C. § 2000e–5(k), but the statute is silent as to who shall pay the fees. Nevertheless, we have said the statute does not authorize assessment of fees against the loser's attorney. *Brown v. Borough of Chambersburg*, 903 F.2d 274, 276–277 & n. 1 (3d Cir.1990) (while noting that the standards for assessing attorney's fees are identical under § 1988 and 42 U.S.C. § 2000e–5(k), "we conclud[ed] that § 1988 does not authorize the award of attorneys' fees against plaintiff's attorney"). *See also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 n. 9, 100 S.Ct. 2455, 2461 n. 9, 65 L.Ed.2d 488 (1980).

■ Although the district court may not assess attorney's fees against Mills under Title VII, it may consider "alternative theories of liability." *Hamer v. Lake County*, 819 F.2d 1362, 1370 (7th Cir.1987). These alternatives include Fed.R.Civ.P. 11 and the court's "inherent power" to sanction an attorney who acts " 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Hamer*, 819 F.2d at 1370, n. 15 (*quoting F.D. Rich Co. v. United States*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40

L.Ed.2d 703 (1974)) (other citations omitted). *Accord Roadway Express*, 447 U.S. at 766–768, 100 S.Ct. at 2464–2465 (court remanded for a determination whether the *Alyeska Pipeline* "bad faith exception" warranted attorney's fees against counsel); *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 918–919 (11th Cir.1982) (court held that 42 U.S.C. § 2000e–5(k) of Title VII of the Civil Rights Act of 1964 did not authorize fees against counsel but remanded to the district court to consider sanctions under its inherent power). *Textor v. Board of Regents of N. Ill. Univ.*, 711 F.2d 1387 (7th Cir.1983) ("[The] power to punish 'counsel who wilfully abused judicial processes' [was] recently recognized as inherent in a court's power to protect the orderly administration of justice.", citing *Roadway Express Inc. v. Piper*, 447 U.S. at 766, 100 S.Ct. at 2464).

Fed.R.Civ.P. 11, for example, permits "[c]omplete or partial fee shifting [as] . . . one form of disciplinary action which a court may invoke in appropriate circumstances." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir.1987). In a situation where a complaint is signed and filed without a reasonable inquiry by the signers that it is well grounded in fact and is warranted by existing law, Rule 11 provides in pertinent part that the court upon motion "or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party . . . the amount of the reasonable expenses incurred because of the filing of the pleading . . ., including a reasonable attorney's fee."

Acting on the basis of this rule, the court of appeals in *Eastway Construction Corp. v. City of New York*, 821 F.2d 121 (2d Cir.1987), (*Eastway II*) decided in the exercise of its appellate authority under 28 U.S.C. § 2106 (1982)[1] to allocate the payment of an attorney's fee between counsel and his client without even remanding to the district court. In the interest of judi-

---

**1.** 28 U.S.C. § 2106 provides in pertinent part: "The Supreme Court or any other court of appellate jurisdiction may affirm, modify . . . or direct the entry of such appropriate judgment . . . as may be just under the circumstances."

cial economy and the authority contained in 28 U.S.C. § 2106 that court of appeals held:

> Having examined the parties' contentions, the prior proceedings, and the observations of the District Judge, we have concluded that one half of the fee award should be imposed jointly and severally upon the plaintiffs and one half should be imposed upon plaintiffs' counsel.

*Eastway II,* 821 F.2d at 124. Similarly, in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) *superseded* by 42 U.S.C. § 1988 (1976), the Supreme Court said that, apart from Rule 11, a court has inherent power, even under the restrictive "American rule," to allow attorneys' fees against an attorney · in particular situations, unless forbidden by Congress. *Alyeska,* 421 U.S. at 259, 95 S.Ct. at 1622. *See also* 28 U.S.C. § 1927.

Hence, it is well-established that courts have the power to impose sanctions on both litigants and attorneys to regulate their docket, to promote judicial efficiency, and to deter abuse of judicial process. *See Roadway Express,* 447 U.S. at 764–67, 100 S.Ct. at 2463–64. In *Roadway Express,* the Court held that, apart from section 1927, federal courts have the inherent power to award attorney's fees against counsel personally when the court has found that the attorney acted in bad faith. "Bad faith is a factual determination reviewable under the clearly erroneous standard. Once a finding of bad faith has been made, the appropriateness of sanctions is a matter entrusted to the discretion of the district court." *Hackman v. Valley Fair,* 932 F.2d

239, 242 (3d Cir.1991) (This is a section 1927 case).

The court in *Roadway Express* did not uphold the trial court's award of attorneys's fees because the trial court did not make a specific finding that counsel's conduct "constituted or was tantamount to bad faith, a finding that would have to precede any sanction under the court's inherent powers." *Roadway,* 447 U.S. at 767, 100 S.Ct. at 2465. Since the district court here did not make a finding as to whether Mills or Quiroga acted in bad faith, we will remand to the trial court to make that determination in the first instance, and to decide whether attorneys' fees should be imposed as a sanction against Quiroga's counsel on any of the above-discussed grounds.[2]

### III.

We will affirm the orders of the district court in appeal No. 90–5284. Although we approve the award of attorney's fees in appeal No. 90–5748, we will remand to the district court with direction to reconsider whether its award should be levied solely upon the plaintiff, under authority of the Civil Rights Statute, 42 U.S.C. § 2000e–5(k) or also upon his attorney under alternative theories of liability.[3]

---

**2.** On September 12, 1980, and after the Supreme Court decided *Roadway,* Congress amended section 1927. *See* the Antitrust Procedural Improvements Act of 1980, pub. 1. No. 96–349 § 3, 94 Stat. 1154, 1156 (September 12, 1980). Therein, Congress amended section 1927 to expressly provide that any attorney who so multiplies proceedings "unreasonably and vexatious may be required by the court *to satisfy personally* the excess costs, expenses, and *attorneys fees* reasonably incurred because of such conduct." 28 U.S.C. § 1927 (emphasis added). The legislative history of this section makes it clear that the September 12, 1980 amendment was intended to "expand [ ] the category of expenses the judges might require and attorney to satisfy personally to include ... attorneys fees." Joint Explanatory Statement of the Committee of

Conference, 96th Cong.2d Sess. 8, reprinted in 1980, U.S.Code Cong. & Ad.News 2716, 2781, 2782; *see also Lewis v. Brown and Root, Inc.,* 711 F.2d 1287, 1289, 1292 (5th Cir.1983) (upholding an award of attorneys fees under section 1927 against plaintiff and his attorney jointly and severally), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984), *modified,* 722 F.2d 209 (per curiam) (remanding for trial court to determine whether attorneys' fees for entire proceeding or just a portion of it should be awarded), *cert. denied,* 467 U.S. 1231, 104 S.Ct. 2690, 81 L.Ed.2d 884 (1984).

**3.** The district court may consider whether Attorney Mills will have a conflict of interest if he continues to represent Quiroga in the proceedings on remand.