

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-4-2007

# Oleksiak v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1148

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Oleksiak v. Comm Social Security" (2007). *2007 Decisions*. Paper 1136.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1136

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-1148
_____

CAROL OLEKSIAK,

Appellant,

v.

JO ANNE B. BARNHART, COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION AGENCY.

_____

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(No. 04-cv-04723)
District Judge: Honorable Cynthia M. Rufe

Submitted Under Third Circuit LAR 34.1(a)
January 25, 2007

Before: SCIRICA, *Chief Judge*, FUENTES and CHAGARES, *Circuit Judges*.

(Filed: May 4, 2007 )
_____

OPINION OF THE COURT
_____

CHAGARES, *Circuit Judge*.

Appellant Carol Oleksiak ("Oleksiak") appeals from the order of the District Court granting summary judgment in favor of Appellee, the Social Security Administration ("SSA"), on her claims for employment discrimination pursuant Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and as applicable to federal employees, 42 U.S.C. § 2000e-16. The statutory basis for her age discrimination claim is unclear from the record on appeal. For the purposes of this decision we assume the basis is the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. Oleksiak alleged in her Complaint that the SSA discriminated against her on the basis of race, gender, and age when she was passed over for promotion to one of twenty vacancies for the position of Benefits Authorizer ("BA"). We will affirm.

I.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment *de novo*. Goosby v. Johnson & Johnson Medical Inc., 228 F.3d 313, 318 (3d Cir. 2000). We apply the same standard as did the District Court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.

2

Because we write solely for the benefit of the parties, we need not undergo a detailed recitation of the factual and legal background of this case.

On July 27, 1998, the SSA issued a vacancy announcement to fill twenty BA positions.[1] At that time, Oleksiak, a Caucasian woman, aged fifty-five, was employed as a clerk by the SSA. She joined the SSA full-time on August 7, 1995. Prior to joining SSA, she worked primarily as a coordinator with the Environmental Protection Agency.

The vacancy announcement drew 190 interested applicants, including Oleksiak. The SSA's Staffing and Classification Team ("the Team") was tasked with determining who of the 190 individuals met the minimal qualifications for the position. Of the 190 original applicants, the Team concluded that 174 applicants satisfied eligibility and minimum qualification requirements. Oleksiak was among this group of 174 to pass the minimal qualification muster.

Culling the group to 174 candidates, the Team then arranged a "List of Eligibles" ("the List") to submit to selection committee officials who would choose the best qualified candidates. The List was initially divided into two sections. The first section consisted of individuals identified pursuant to the "competitive procedures" described in

---

[1] The job requirements for a BA include calculating payments and deciding SSA claims based upon SSA policies and rules. A BA makes final determinations on issues involving postadjudicative actions, entitlement to benefits and payments, and adjustments to established benefits, among other things.

5 C.F.R. § 335.103(c)(1). These individuals were eligible and minimally qualified but had never held the pay grade to which they now applied. There were approximately 166 candidates on this portion of the List, of whom Olekisak was one. The second section, entitled "Exception to Merit Promotion Plan," consisted of individuals identified in 5 C.F.R. § 335.103(c)(3). These candidates were eligible and minimally qualified but had once permanently held a pay grade similar to or higher than the grade of the BA position. There were approximately thirteen candidates on this section of the List.

The next step in the selection process entailed seeking comments from each applicant's supervisor. The SSA's Mid-Atlantic Program Service Center is comprised of four "Process Areas." Each Process Area is supervised by an Operations Manager. Each Operations Manager is responsible for four "Process Modules" within his or her Process Area. Each Process Module has a supervisor who reports to the appropriate Operations Manager. To facilitate the gathering of this information, the List was sorted by the supervisor for whom the candidate worked, eliminating the original differentiation made between "competitive" and "exempt" applicants. Additionally, some applicants were employed outside the SSA's Mid-Atlantic center. Supervisors of those applicants were also solicited for comment. Oleksiak competed for BA positions not only with the other applicants in her Process Area, but also with the candidates from the other three Process Areas, as well as with candidates from other divisions within the SSA, like the Philadelphia Teleservice Center and the Debt Management Section.

4

The Operations Manager in charge of promotions, Genevieve Fardella, forwarded each candidate's name to that candidate's first-line supervisor with the request that the supervisor comment on six evaluation factors. The six factors were: (1) oral communication; (2) written communication; (3) reliability/dependability; (4) potential technical ability; (5) current performance; and (6) initiative. For comparison purposes, a grid was developed which included the candidates' names and the accompanying comments. None of the documents used during the selection process contained the candidates' race, sex, or age. The SSA contends that none of the selection officials discussed race, sex or age during the selection process.

After collecting and cataloging all of the pertinent information on the grid, the supervisors, Operations Manager Fardella and the Deputy Operations Manager met to discuss their experiences with each candidate. It was at this point that the candidates were ranked. Oleksiak worked in Process Area #4. In this Process Area, twenty-six SSA employees, including her, were initially determined to be eligible and minimally qualified for the BA positions. Based on the supervisor comments, Oleksiak was ultimately ranked sixteenth out of twenty-six from her group.

After ranking the candidates within their respective Process Areas, the List with all the relevant commentary was sent to the final selection committee (a group of four Operations Managers) to select the top thirty candidates. Oleksiak was not among the candidates chosen in the top thirty. To parse the list to the desired number of twenty,

another round of discussions ensued between the members of the final selection committee. To insure that each candidate selected for a BA position had the full support of all the members of selection committee, the final list of twenty names was determined by consensus and not by vote.

Perhaps disgruntled about not receiving a promotion to BA, Oleksiak filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC conducted an investigation and determined that of the twenty individuals chosen for promotion, sixteen were female, and two were Caucasian. With regard to age, nine were under forty, three were between the ages of forty and forty-two, three were between the ages of forty-three and forty-seven, and three were between the ages of forty-eight and fifty-two. The EEOC issued its final order on July 14, 2004 issuing Oleksiak a Right to Sue letter, but declined to take further action. Oleksiak filed a pro se Complaint with the District Court on October 7, 2004.[2]

The SSA moved for summary judgment, which the District Court granted by order dated November 10, 2005. Oleksiak first argued that she should have been listed in the "exempt" portion of the List rather than in the "competitive" portion. According to Oleksiak, if she had been correctly identified as an "exempt" candidate, she would have had a better chance for promotion to a BA position. The District Court held that it lacked

_____

[2] Oleksiak retained counsel shortly after the SSA filed its motion for summary judgment.

jurisdiction to review the SSA's application of its rules and regulations. Oleksiak could seek relief under the grievance process pursuant to 5 C.F.R. § 335.103. However, to the extent that Oleksiak claimed that her alleged mis-placement on the List was evidence of discrimination, the District Court noted that "the method of selection did not distinguish competitive from non-competitive [exempt] employees, and overall competitive employees actually had a slightly higher rate of selection than the exempt employees. Therefore even reading the facts in the light most favorable to Plaintiff, the Court finds no genuine issue of material fact as to Plaintiff's injury from her treatment as a competitive employee." (A17.)

With regard to her claims for discrimination based on race, sex and age, the District Court applied the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The District Court concluded that Oleksiak had met her burden to establish a prima facie case for discrimination based on race and age, in that only two out of twenty people selected for the BA positions were Caucasian and, although half were over the age of forty, none were as old as Oleksiak at age fifty-five. However, the District Court determined that Oleksiak's claim for gender discrimination failed as a matter of law, because sixteen out of twenty candidates promoted to the BA positions were female.

The burden then shifted to the SSA to demonstrate legitimate, non-discriminatory reasons for its failure to promote Oleksiak to a BA position. The District Court agreed

with the SSA's explanation that the candidates were chosen strictly on the basis of their supervisors' comments on six job-related criteria. Oleksiak was not among the twenty strongest candidates for the BA positions. Thus, she was not selected. As the facts bear this out, the Court rightly concluded that the SSA articulated a legitimate, non-discriminatory basis for its decision not to select Oleksiak.

Reviewing Oleksiak's evidence of pretext, the District Court concluded that Oleksiak failed to produce any evidence that discrimination was more likely than not a motivating or determinative factor in her adverse employment decision. "Plaintiff clearly was not among the twenty [ ] most outstanding candidates, based on ratings by her direct supervisor; the same process was applied to Plaintiff as to all other candidates for the position; and the evidence suggests that Defendant actually relied upon the stated promotion criterion [sic]." (A21-A22.)

Four of the final twenty candidates chosen for BA positions came from Process Area # 4, as did Oleksiak: Darlene Caldwell, Barbara K. Ennett, Angelina Johnson, and Brian Wilkinson. Like Oleksiak, these four were also on the "competitive" portion of the List. As a point of comparison, Oleksiak received the following comments from her supervisors:

> (1) oral communication: Carol communicates in a clear and concise manner;
> (2) written communication: While typing she will question and try to resolve grammar and spelling mistakes made by the technicians;
> (3) reliability/dependability: Assignments are completed in timely manner. Her attendance is unstable. I believe this is due to personal

8

situations;
(4) potential technical ability: Carol probably has the ability to handle the BA position;
(5) current performance: Carol will take the initiative to handle additional work;
(6) initiative: excellent.

Darlene Caldwell received the following comments:[3]

(1) Oral communication: She has demonstrated excellent skills in this area. . . . Darlene has shown herself to be an effective listener and has demonstrated that she possesses a command of language skills;
(2) Written communication: Above average;
(3) Reliability/dependability: Darlene most effectively and in a timely manner handles job activities. She regularly completes assigned work and moves on to additional assignments.. Darlene requests and schedules time off in a most prudent manner and can be depended upon to make the most efficient use of her work time;
(4) Potential technical ability: In her current job, Darlene has demonstrated the ability to effectively utilize and interpret procedure; efficiency in processing work through MCDE, evaluates casework issues and takes the proper corrective actions. Darlene has shown outstanding potential for success in the BA position;
(5) Current performance: Outstanding. She was a ROC as well as CASA awardee;
(6) Initiative: Great! Darlene is a self-starter, independent and shows that she cares about the work.

Angelina Johnson's supervisor said:

(1) Oral communication: Ms. Johnson is a truly outstanding candidate for selection to the BA position. . . . Angelina has demonstrated the ability to listen and convey information in an appropriate manner. She performs these duties with compassion and patience while maintaining a businesslike and professional

---

[3] Barbara Ennett's comments were very similar to Darlene Caldwell's and we forgo recitation of them here.

9

demeanor;

(2) Written communication: Not observed;

(3) Reliability/dependability: Ms. Johnson's leave has been used appropriately with close adherence to office policy for requesting leave in advance. She can be relied upon to perform all phases of her duties;

(4) Potential technical ability: Ms. Johnson has a very quick mind and adapts very well to changes in priorities and procedures, She has a fine basic grasp of her workflow. Her technical potential is outstanding;

(5) Current performance: Ms. Johnson's performance is outstanding in all areas;

(6) Initiative: Outstanding.

Finally, Brian Wilkinson's comments were as follows:

(1) Oral communication: Outstanding. Makes the best impression in all situations. Demonstrates proper telephone techniques and etiquette. Presents views logically;

(2) Written communication: Not observed;

(3) Reliability/dependability: Above Average. Provides reliable attendance. Exceptionally reliable and trustworthy. All deadlines are exceeded;

(4) Potential technical ability: Outstanding. Strong powers of mental retention and systematic observation. Adapts quickly to change. Rapid learner;

(5) Current performance: Outstanding. Brian can be relied upon to exceed all output expectations to an unusual degree. He shows professional concern for quality of work;

(6) Initiative: Above Average. Displays a spirit of determination. Performs beyond expectations. Totally absorbed in work.

Despite the overwhelmingly positive comments Brian Wilkinson received from his supervisor, Oleksiak argued before the District Court that he did not meet minimum eligibility requirements because he had only worked for the SSA for two years prior to applying for the BA position. The vacancy announcement stated that eligible candidates

10

must have at least three years of general experience or one year of specialized experience. As the District Court noted, however, the vacancy announcement did not specify that experience had to be gained through government employment. Wilkinson had prior, general experience in non-governmental employment. Oleksiak did not proffer any evidence to suggest that Wilkinson had not acquired an additional year of experience outside the SSA and Oleksiak failed to point to any evidence suggesting Wilkinson received preferential treatment based on his race, sex, or age.

In addition to the selectees who came from the same Process Area as Oleksiak, Oleksiak identified Linda D. Preston and Roslyn Johnson, African-American women, who received, according to Oleksiak, preferential treatment in the selection process which, she argues, demonstrates the SSA's discriminatory animus. Specifically, Oleksiak contended that Roslyn Johnson's name appeared in the exempt portion of the list; she was the only candidate selected therefrom; and the SSA offered no explanation or justification for her selection. As for Linda Preston, Oleksiak argued that the date of her application reflected that it was submitted one year prior to the announcement of the position. According to Oleksiak, the SSA should have rejected the application as being untimely, but instead, Linda Preston was promoted to one of the BA positions. The District Court found that these candidates were rated highly in the six job-related criteria and further concluded that Oleksiak failed to demonstrate that these candidates were given any special treatment in the selection process.

11

Finally, Oleksiak pointed to the comment made by her supervisor that her attendance was "unstable," which Oleksiak argued was evidence of discrimination. Accepting the statement as untrue for the purpose of the summary judgment motion, the District Court rightly determined that it showed no discriminatory animus; that is animus *because of* a protected characteristic. Likewise, the District Court determined that the statement by Operations Manager Fardella that Oleksiak failed to distinguish herself from better candidates pursuing openings for positions prior to the BA position was not evidence of discrimination.

IV.

On appeal, Oleksiak argues that the District Court weighed conflicting evidence and drew inferences unfavorable to her as the non-moving party, and therefore we must vacate and remand for trial. We disagree. Oleksiak has not pointed to a shred of evidence that would support a claim that she was refused a promotion for discriminatory reasons. "To avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994) (internal citations omitted).

Oleksiak was clearly not among the highest qualified candidates for the promotion

12

to BA. Though she may have been the oldest, that fact alone does not rebut the SSA's legitimate, stated reasons for not promoting her. Likewise, the fact that she is Caucasian and the SSA promoted only two Caucasians out of twenty for BA positions, standing alone, proves nothing. Oleksiak offers no evidence except her own conclusory statements and suppositions as proof that the SSA's decision not to promote her to a BA position was made because of her race or her age. The non-moving party simply "may not rest upon mere allegations, general denials, or . . . vague statements." Quiroga v. Hasbro, Inc., 934 F.3d 497, 500 (3d Cir. 1991). Indeed, Oleksiak must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Oleksiak's arguments raised in this appeal have no merit and we agree with the conclusions reached by the District Court.