# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denniston Family Limited Partnership, :
d/b/a Village Realty Associates, Ltd., :
           Petitioner :
            :
           v. :
            :
Pennsylvania Human Relations :
Commission, : No. 326 C.D. 2019
           Respondent : Argued: December 10, 2019


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: January 9, 2020


        Denniston Family Limited Partnership d/b/a Village Realty Associates, Ltd. (Village Realty) petitions for review of the February 26, 2019 adjudication and order of the Pennsylvania Human Relations Commission (Commission) holding Village Realty liable for retaliating against its former tenant, Jonathan Blaine (Blaine), as prohibited by Section 5(d) of the Pennsylvania Human Relations Act (Act).[1]  The Commission ordered Village Realty to make restitution to Blaine and

---

[1] Section 5(d) of the Pennsylvania Human Relations Act (Act), Act of October 27, 1955, P.L. 744, *as amended*, provides:

    It shall be an unlawful discriminatory practice . . . [f]or any person, employer, employment agency or labor organization to discriminate in any manner against

ordered the payment of reasonable out-of-pocket expenses, compensatory damages and a civil penalty for violating the Act. On appeal, Village Realty contends that the Commission erred, as a matter of law, when it concluded that Blaine met his burden of proving retaliation based on the evidence presented. Upon review, we affirm.

Blaine entered into a one-year lease to reside in a Village Realty-owned apartment complex commencing June 1, 2014 through May 31, 2015. Findings of Fact, Conclusions of Law, Opinion & Recommendation of Hearing Examiner dated Feb. 5, 2019 (Hearing Examiner's Decision), Findings of Facts (F.F.) 7-9. At the end of the original lease period, the lease became a month-to-month tenancy. F.F. 9. In January 2015, Blaine's therapist prescribed an emotional support animal and Blaine called Village Realty to request permission to have an animal live with him. F.F. 10-11. Village Realty told Blaine to provide the prescription for the animal and everything would be fine. F.F. 12. Blaine provided Village Realty with the prescription and subsequently purchased a dog. F.F. 13-14. In or around March 2015, the apartment manager went to Blaine's apartment to inform him that he could either vacate the apartment within 30 days or remove the dog he had purchased. F.F. 22. Blaine then filed a complaint with the Commission alleging that Village Realty was not allowing him to have an emotional support animal. F.F. 23. On April 22, 2015, Village Realty signed an agreement settling the complaint, and Blaine subsequently executed the agreement on April 24, 2015. F.F. 24-25. Pursuant to the agreement, Blaine was allowed to have an emotional support animal in the apartment he was renting. F.F. 26.

---

any individual . . . *because such individual has made a charge*, testified or assisted, in any manner, in any investigation, proceeding or hearing *under this act*.

43 P.S. § 955(d) (emphasis added).

2

Village Realty received no complaints about Blaine's emotional support dog from January 2015 until April 2015. F.F. 27. Around the time the parties resolved the initial complaint with the Commission, Village Realty, through Bridgett McAuliffe (McAuliffe), began to send Blaine letters, regularly, pertaining to the care of his dog. Blaine's next door neighbor testified that he contacted the on-site manager at least three times regarding complaints about "dog waste" and spots in the yard where "a dog had gone." F.F. 46. From April through June 2015, McAuliffe sent Blaine six letters. Three of these letters, dated April 14, April 29 and May 27, directed Blaine to "immediately" clean up the dog waste and "dispose of it properly each and every time the animal goes." F.F. 28-29, 35-36 & 43. McAuliffe sent Blaine two letters, dated April 16 and June 16, instructing Blaine not to place the dog waste bags outside, to keep them inside his apartment or immediately place them in the dumpsters, and to clean up all of it "immediately." F.F. 32 & 44. McAuliffe also sent Blaine a letter, dated May 13, regarding a complaint of his dog "barking and crying all day." F.F. 40.

In response to these letters, Blaine contacted Village Realty by phone and left a message requesting a return call, but no one returned his call. F.F. 30-31 & 34. Blaine sent a letter to Village Realty, dated May 1, 2015, explaining that he attempted to call Village Realty regarding the complaints relating to the waste. F.F. 38. Additionally, Blaine sent a letter dated May 21, 2015 referencing the complaint relating to noise. F.F. 41. Village Realty did not respond to Blaine's letters. F.F. 39 & 42.

By letter dated July 1, 2015, McAuliffe wrote to Blaine giving him 60 days' notice that Village Realty intended to take possession of Blaine's apartment on August 31, 2015, thereby precluding Blaine from continuing the month-to-month

3

lease, as his one-year lease expired on May 31, 2015. F.F. 9 & 48. On July 30 or 31, 2015, Blaine moved out of his apartment. F.F. 53. Blaine subsequently filed a complaint with the Commission alleging that Village Realty refused to renew his lease in retaliation for having filed a prior complaint.

After a hearing on the retaliation complaint, the hearing examiner proposed the following conclusions of law:

> 6. Filing a Complaint with the [Commission] is a protected activity under the [Act].
>
> 7. Blaine has established a prima facie case of retaliation.
>
> 8. Village Realty offered a legitimate non-discriminatory reason for failing to renew Blaine's lease.
>
> 9. Blaine has proven that Village Realty's reason for failing to renew his lease is a pretext for unlawful retaliation.

Hearing Examiner's Decision, Conclusions of Law (C.L.) Nos. 6-9. The hearing examiner recommended an order requiring Village Realty to cease and desist from retaliating against "anyone who engages in protected activity under the [Act]," and to pay damages totaling $8,333.67 to cover out-of-pocket expenses, compensatory damages for Blaine's embarrassment and humiliation, and the payment of a civil penalty. On November 27, 2017, the Commission issued an order approving and adopting the hearing examiner's findings of fact, conclusions of law and proposed order in total.

On December 27, 2017, Village Realty petitioned this Court for review, asking the Court to reverse the Commission's order because the Commission erred when it concluded (1) that Blaine established a *prima facie* case of retaliation, and

(2) that Blaine established that Village Realty's reason for failing to renew his lease was a pretext for unlawful retaliation. This Court determined the Commission erred as a matter of law by applying an inappropriate legal standard in its determination. *See Denniston Family Limited P'ship, d/b/a Village Realty Assocs., Ltd. v. Pa. Human Relations Comm'n* (Pa. Cmwlth., No. 1886 C.D. 2017, filed Dec. 21, 2018), slip op. at 10. Accordingly, this Court vacated the Commission's order and remanded the matter to the Commission to conduct an analysis employing the proper legal standard. *Id.*

On February 5, 2019, the hearing examiner proposed a new recommendation with revised findings of facts, conclusions of law,[2] and opinion intended to address the concerns expressed by this Court's prior decision. *See* Hearing Examiner's Decision. On February 26, 2019, the Commission issued an order approving and adopting the Hearing Examiner's Decision in total. On March 25, 2019, Village Realty again petitioned this Court for review.[3]

On appeal, Village Realty again asks this Court to reverse the Commission's order because the Commission erred when it concluded (1) that Blaine established a *prima facie* case of retaliation and (2) that Blaine established that Village Realty's reason for failing to renew his lease was a pretext for unlawful

---

[2] The findings of fact and conclusions of law from the hearing examiner's February 5, 2019 recommendation were identical to the findings of fact and conclusions of law contained in the hearing examiner's previous recommendation. *See* Hearing Examiner's Decision at 2-9; *see also* Findings of Fact, Conclusions of Law, Opinion & Recommendation of Hearing Examiner dated Nov. 8, 2017. The analysis in the Opinion section of the Hearing Examiner's Decision was modified pursuant to this Court's direction. *See* Hearing Examiner's Decision at 10-29.

[3] This Court's scope of review of a Commission matter is whether the adjudication is in accordance with law, whether constitutional rights have been violated, or whether the findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Spanish Council of York, Inc. v. Pa. Human Relations Comm'n*, 879 A.2d 391, 397 n.15 (Pa. Cmwlth. 2005).

5

retaliation. Village Realty's Brief at vii.[4] In response, the Commission asserts that the Commission's legal conclusions are supported by the law and the facts of record and, therefore, the award of damages to Blaine was appropriate. *See* Commission's Brief at 6 & 15.

Section 5(d) of the Act provides that it "shall" be an unlawful discriminatory practice for any person to discriminate in any manner against any individual "*because such individual has made a charge*" under the Act. 43 P.S. § 955(d) (emphasis added). The regulations construing the Act further provide, in pertinent part, that "[i]t is an unlawful discriminatory activity to . . . *[r]etaliate*, intimidate, threaten, interfere or discriminate against a person . . . *because the individual has made a charge*, testified or assisted in an investigation, proceeding or hearing *under the act* . . . ." 16 Pa. Code § 45.11(a)(5) (emphasis added).

To establish a *prima facie* case of retaliation under the Act, this Court has relied on the burden-shifting model established by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).[5] Under this model, the complainant bears the initial burden of proving a *prima facie* case by

---

[4] Village Realty purports to raise nineteen (19) separate issues on appeal, which are properly distilled as stated above. *See* Village Realty's Brief at vii-x (issues 18 & 19 included on unnumbered page following page x). "Appellate advocacy is measured by effectiveness, not loquaciousness." *United States v. Hart,* 693 F.2d 286, 287 n.1 (3d Cir. 1982), *quoting* Aldisert, "The Appellate Bar: Professional Competence and Professional Responsibility—A View From the Jaundiced Eye of One Appellate Judge," 11 Cap. U.L.Rev. 445, 458 (1982).

[5] This model was adopted by our Supreme Court in *General Electric Corporation v. Pennsylvania Human Relations Commission*, 365 A.2d 649 (Pa. 1976), for purposes of discrimination cases brought under the Act. *Spanish Council*, 879 A.2d at 397 n.16; *Canteen Corp. v. Pa. Human Relations Comm'n*, 814 A.2d 805, 810 (Pa. Cmwlth. 2003) (explaining that the *McDonnell Douglas* test is a burden-shifting test to establish discrimination where a complainant has no direct proof of discrimination).

preponderance of the evidence. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (explaining the *McDonnell Douglas* burden-shifting model).

> The complainant establishes a *prima facie* case by showing that: (1) the complainant engaged in a protected activity; (2) the respondent was aware of the protected activity; (3) that subsequent to participation in the protected activity complainant was subjected to an adverse action by the respondent; (4) and that there is a causal connection between participation in the protected activity and the adverse action.

*Spanish Council of York, Inc. v. Pa. Human Relations Comm'n*, 879 A.2d 391, 397 (Pa. Cmwlth. 2005). Once a complainant makes a *prima facie* case, the respondent has a production burden to articulate a legitimate non-discriminatory reason for taking the alleged adverse action. *Id*. If the respondent meets this burden, then the complainant is given the opportunity to prove that the respondent's articulated reason is a pretext for discrimination. *Id*.

Here, no dispute exists that: (1) Blaine engaged in protected activity by filing the complaint with the Commission; (2) Village Realty was aware of the complaint; and (3) Village Realty refused to renew Blaine's lease after he filed the complaint. *See* Hearing Examiner's Decision at 16. Further, the parties do not dispute that the refusal to renew the lease was an adverse action. *Id.* Thus, the primary issue considered by the Commission was whether Blaine demonstrated the fourth element of his *prima facie* case, specifically, a causal connection between participation in the protected activity and the adverse action.

To establish a causal connection, a complainant must prove either "(1) an unusually suggestive temporal proximity between the protected activity and alleged retaliatory action, or (2) a pattern of antagonism coupled with timing to

7

establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference. *Id.*

Additionally, the mere fact that one event occurred subsequent in time to another event is in and of itself insufficient to establish a causal connection between the two events. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (explaining that timing of adverse action "standing alone" cannot establish a causal link of retaliation); *Quiroga v. Hasboro, Inc.*, 934 F.2d 497, 501 (3d Cir. 1991) (rejecting argument that timing of adverse action alone creates an inference of retaliation). In *Krouse*, the court explained that the timing would have to be "'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Krouse*, 126 F.3d at 503; *see also Spanish Council*, 879 A.2d at 399.

Therefore, though the burden at this stage is minimal, the complainant here, Blaine, had to show facts to allow the Commission to conclude that Village Realty terminated his lease *because* he filed his complaint. Otherwise stated, Blaine needed to show that the two events were causally related. *Lauren W.*, 480 F.3d at 267.

In reviewing whether the filing of the complaint by Blaine and Village Realty's termination of Blaine's lease were causally related, the hearing examiner noted evidence that established a causal connection by more than mere temporal proximity. *See* Hearing Examiner's Decision at 19-21.[6] First, the hearing examiner

---

[6] We acknowledge that the Commission is the ultimate factfinder in Commission matters. *See Dep't of Transp. v. Pa. Human Relations Comm'n*, 480 A.2d 342, 345 (Pa. Cmwlth. 1984) ("questions regarding the credibility of witnesses and the weight to be accorded the evidence presented are for the Commission alone to resolve"). However, for simplicity's sake, we will refer to the findings and decision as those of the hearing examiner who made the determinations in the

8

noted that Village Realty received no complaints regarding Blaine's dog from the time Blaine got the dog, in January of 2015, until directly after Blaine signed the agreement with Village Realty settling his complaint in the latter part of April 2015. *See id.* at 19. The hearing examiner also noted Village Realty's repeated failure to communicate with Blaine by telephone and/or respond to his letters and Village Realty's less than credible evidence on the subject of communication. *Id.* at 19-20. Additionally, the hearing examiner noted that Blaine's discussions with his neighbors revealed that, contrary to the suggestions contained in Village Realty's letters, none had made complaints to Village Realty regarding his dog. *Id.* at 20-21. The hearing examiner also noted that Village Realty's July 1, 2015 letter instructing Blaine to leave within 60 days made no mention of his dog and that, in a telephone call regarding the notice, no mention of the dog was made by Village Realty, who informed Blaine simply that it was not obligated to renew his lease. *Id.* at 21. Finally, the hearing examiner noted a discrepancy in the photographs Village Realty offered to support its claim that it decided not to renew Blaine's lease based on dog waste issues, namely that two of the submitted photographs, despite being purportedly from two different incidents, were the same photograph. *Id.*

Based on the above evidence, the hearing examiner, and thus the Commission, concluded that, "[c]ollectively, the evidence adds up to a finding that Blaine has established the fourth element of the requisite *prima facie* showing [of retaliation]." Hearing Examiner's Decision at 21. We agree that the balance of this evidence illustrated an adequate "pattern of antagonism coupled with timing to establish a causal link." *Lauren W.*, 480 F.3d at 267. Accordingly, the hearing

first instance. Here, the Commission approved and adopted the Hearing Examiner's Decision in total. *See* Commission Final Order dated Feb. 26, 2019.

9

examiner did not err in concluding that Blaine demonstrated the fourth element of his *prima facie* case of retaliation.

In articulating a legitimate, non-discriminatory reason for terminating Blaine's lease, Village Realty contended: (1) it received complaints from neighbors that Blaine failed to clean up after his dog; (2) when Blaine did clean up after his dog, he left bags of waste outside the apartment building; and (3) Blaine failed to communicate with Village Realty when requested. *See* Hearing Examiner's Decision at 21-22. The hearing examiner concluded that Village Realty's articulated reasons for terminating Blaine's lease adequately fulfilled Village Realty's burden to produce non-discriminatory reasons for terminating Blaine's lease, and, therefore, the burden shifted back to Blaine to establish that Village Realty's articulated reasons were, in fact, a pretext for retaliation. *Id.* at 22. Based on these reasons, we find no error with the hearing examiner's conclusion that Village Realty articulated sufficient non-discriminatory reasons for not renewing Blaine's lease such that the burden returned to Blaine to prove that Village Realty's articulated reasons were pretexts for discrimination.

Litigants ordinarily demonstrate that proffered reasons are a pretext for unlawful retaliation "by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the [] proffered legitimate reasons for [] action that a reasonable factfinder could rationally find them unworthy of credence." *Krouse*, 126 F.3d at 504 (internal quotation marks omitted).

In assessing whether the evidence in this matter demonstrated that Village Realty's reasons were unworthy of credence, the hearing examiner stated that the record considered as a whole established that Village Realty's purportedly

10

non-discriminatory reasons were pretexts for retaliation. *See* Hearing Examiner's Decision at 22-24. The hearing examiner stated as follows:

> Considering the record in this case as a whole, we find that Blaine has established that the reasons offered by Village Realty are a pretext for retaliation. First, Blaine brought home a puppy in January 2015. Village Realty offers that dog waste problems did not begin until mid-April, 2015, approximately 3 months later. Also, we note that Blaine had brought a [Commission] Complaint because of perceived problems Village Realty was giving him because he now had an emotional support animal at an apartment complex that does not have dogs. Of the apartment complexes owned by Village Realty, there are dog friendly complexes, however, Blaine brought a dog into a dog free complex. This resulted in Village Realty settling Blaine's allegation and permitted the emotional support animal.
>
> Of course, as to the reality of being required to allow a dog in the complex, Village Realty began a campaign of documenting purported issues with dog waste, bags of dog waste left near the building, and barking and crying. The problem Village Realty has in this regard is that Village Realty purportedly only ever had one neighbor complaint but stated that there were complaints by neighbors. Village Realty offered the testimony of Jerry Conrad in support of the contention that Village Realty had received complaints. On this point, not only did Blaine testify that he personally asked Conrad if he had issues with his dog and purportedly Conrad said no, there is also testimony of a [Commission] investigator who spoke with Conrad over the telephone in March 2016. The [Commission] investigator offered that when she asked Conrad if he had complained to the manager on site, he said no and further, he answered no when asked if Blaine failed to clean up after his dog.

11

Another interesting thing about [] Conrad is that, allegedly, [although] he was the source of complaints between April 2015 and when Blaine's lease was terminated in July 2015, his "to whom it may concern" letter was not written until over a year later on August 8, 2016. He did not recall complaining when he spoke with the [Commission] investigator in March 2016 but did recall in August 2016. One has to wonder what actually prompted the August 8, 2016 letter by Conrad. Clearly, there had been no written complaints made previously.

Another telling situation regarding a showing of pretext is Village Realty's purported requirement that any response to their letter had to be in writing. Clearly, Blaine called Village Realty 4 times and wrote twice, yet, Village Realty offers that there had been a "blatant FAILURE to communicate" on Blaine's part. The failure to communicate was not Blaine's failure, the failure was Village Realty's failure. What appears to have happened is that Village Realty was on a mission to make it appear that Blaine's emotional support animal had become such a problem that Blaine's lease had to be terminated.

Hearing Examiner's Decision at 22-24 (internal record citations omitted).

Based on the above, the hearing examiner concluded that evidence, when considered as a whole, demonstrated that Village Realty's allegedly legitimate, non-discriminatory reasons for terminating Blaine's lease were pretexts for unlawful retaliation. Hearing Examiner's Decision at 24. Having so determined, the hearing examiner found Village Realty had retaliated against Blaine under the Act. *Id.*

On review, we find no error in the hearing examiner's determination, which the Commission adopted, that Blaine proved Village Realty retaliated in violation of the Act, specifically, the hearing examiner's determinations that the multiple complaints Village Realty allegedly received about Blaine's dog and dog waste, as well as the purported photographic evidence of the alleged offending

12

excrement, were dubious, at best. *See Dep't of Transp. v. Pa. Human Relations Comm'n*, 480 A.2d 342, 345 (Pa. Cmwlth. 1984). Further, the testimony regarding Village Realty's course of action and communication throughout the process of terminating Blaine's lease supported the finding that Blaine repeatedly unsuccessfully attempted to communicate with Village Realty and that Village Realty had little to no genuine desire to solve any of the problems allegedly created by Blaine's dog. This evidence further supported the finding that Village Realty's proffered reasons for terminating Blaine's lease suffered from such weaknesses, implausibilities, inconsistencies, and contradictions that the hearing examiner could have rationally found them to be unworthy of credence. As such, the hearing examiner and the Commission did not err in concluding that Village Realty retaliated against Blaine under the Act.

Accordingly, we affirm the Commission's adjudication and order.

_____
CHRISTINE FIZZANO CANNON, Judge

13

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denniston Family Limited Partnership, :
d/b/a Village Realty Associates, Ltd., :
         Petitioner :
          :
         v. :
          :
Pennsylvania Human Relations :
Commission, : No. 326 C.D. 2019
         Respondent :

## O R D E R

AND NOW, this 9th day of January, 2020, the February 26, 2019 order of the Pennsylvania Human Relations Commission is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge